FARMERS' AND MECHANICS' NATIONAL BANK *v.* DEARING.

1. The only forfeiture declared by the thirtieth section of the act of June 3, 1864 (13 Stat. 99), is of the *entire interest* which the note, bill, or other evidence of debt, carries with it, or which has been agreed to be paid thereon, when the rate knowingly received, reserved, or charged by a national bank is in excess of that allowed by that section; and no loss of the entire debt is incurred by such bank, as a penalty or otherwise, by reason of the provisions of the usury law of a State.
2. National banks organized under the act are the instruments designed to be used to aid the government in the administration of an important branch of the public service; and Congress, which is the sole judge of the necessity for their creation, having brought them into existence, the States can exercise no control over them, nor in any wise affect their operation, except so far as it may see proper to permit.

ERROR to the Court of Appeals of the State of New York. The facts are stated in the opinion of the court.

*Mr. E. G. Spaulding* for the plaintiff in error.

The real question presented in this case is, whether the discount of a note by a national bank, — organized under the act of Congress, approved June 3, 1864, — at a greater rate of interest than allowed by the statute of the State where such bank is located, renders it liable to the penalty for usury provided by the State statute.

The act of June 3, 1864, supersedes the State laws imposing penalties for usury in so far as they are applicable to national banks. *Davis, Receiver, &c.* v. *Randall*, 115 Mass. 547; *Central National Bank* v. *Pratt*, id. 539; *National Bank of Erie* v. *Brown*, 72 Penn. 209; *Wiley* v. *Starbuck*, 44 Ind. 298; *Tiffany* v. *Missouri State Bank*, 18 Wall. 409; *Citizens' National Bank of Piqua* v. *Leming*, 8 Int. Rev. Record, 132; *First National Bank of Columbus* v. *Gurlinghouse*, 22 Ohio St. 492.

*Mr. Thad. C. Davis* for the defendant in error.

No privilege of immunity from the usury laws of the State is conferred upon the national banks by the act of Congress of 1864; and a contract for a loan made in the State of New York with one of these organizations, by which it reserves a greater rate of interest than seven per cent, is void. *First National Bank of Whitehall* v. *Lamb*, 50 N. Y. 95.

MR. JUSTICE SWAYNE delivered the opinion of the court.

The question presented for our determination involves the construction of the provisions of the national bank act of Congress of the 3d of June, 1864, 13 Stat. 99, upon the subject of the interest to be taken by the institutions organized under that act.

The plaintiff in error is one of those institutions. The thirtieth section of the act declares " that every association may take, receive, reserve, and charge, on any loan or discount made, or upon any note, bill of exchange, or other evidences of debt, interest at the rate allowed by the laws of the State or Territory where the bank is located, and no more; except that where, by the laws of any State, a different rate is limited for banks of

issue organized under State laws, the rates so limited shall be allowed for associations organized in any such State under this act. And, when no rate is fixed by the laws of the State or Territory, the bank may take, receive, reserve, or charge a rate not exceeding seven per centum, and such interest may be ~~taken~~ in advance, reckoning the days for which the note, bill, or ~~other~~ evidence of debt, has to run. And the knowingly taking, receiving, reserving, or charging a rate of interest *greater than aforesaid* shall be held and adjudged a forfeiture of the entire interest which the note, bill, or other evidence of debt, carries with it, or which has been agreed to be paid thereon. And, in case a greater rate of interest has been paid, the person or persons paying the same, or their legal representatives, may recover back, in any action of debt, twice the amount of interest thus paid from the association taking or receiving the same, provided that such action is commenced within two years from the time the usurious transaction occurred. But the purchase, dis count, or sale of a *bona fide* bill of exchange, payable at another place than the place of such purchase, discount, or sale, at not more than the current rate of exchange for sight drafts, in addition to the interest, shall not be considered as taking or receiving a greater rate of interest."

The facts of the case are few and simple. On the 2d of September, 1874, it was agreed between the parties that Dearing should make his promissory note to one Deitman for $2,000, payable one month from date, and that the bank should discount the note for Dearing at the rate of interest of ten per cent per annum. This agreement was carried out. The bank received the note, and paid to Dearing the sum of $1,981.67. The discount reserved and taken was $18.33. The rate of interest which the bank was legally authorized to take was seven per cent per annum. The excess reserved over that rate was $5.50. Dearing failed to pay the note at maturity. The bank thereupon sued him in the Superior Court of Buffalo. He answered, that the agreement touching the discount was usurious, corrupt, and illegal; that it avoided the note; and that he was in no wise liable to the plaintiff. The court sustained this defence, and gave judgment for the defendant.

At a general term of that court the judgment was affirmed,

and the judgment of affirmance was subsequently affirmed by the Court of Appeals.

No searching analysis is necessary to eliminate the several provisions of the section to be considered to develop the true meaning of each, and to draw the proper conclusions from all of them taken together.

(1.) The rate of interest chargeable by each bank is to be that allowed by the law of the State or Territory where the bank is situated.

(2.) When, by the laws of the State or Territory, a different rate is limited for banks of issue organized under the local laws, the rate so limited is allowed for the national banks.

(3 ) Where no rate of interest is fixed by the laws of the State or Territory, the national banks may charge at a rate not exceeding seven per cent per annum.

(4.) Such interest may be reserved or taken in advance.

(5.) Knowingly reserving, receiving, or charging " a rate of interest *greater than aforesaid* shall be held and adjudged a forfeiture of the interest which the note, bill, or other evidence of debt, carries with it, or which has been agreed to be paid thereon."

(6.) If a greater rate has been paid, twice the amount so paid may be recovered back, provided suit be brought within two years from the time the usurious transaction occurred.

(7.) The purchase, discount, or sale of a bill of exchange, payable at another place, at not more than the current rate of exchange on sight drafts, in addition to the interest, shall not be considered as taking or reserving a greater rate of interest than that permitted.

These clauses, examined by their own light, seem to us too clear to admit of doubt as to any thing to which they relate. They form a system of regulations. All the parts are in harmony with each other, and cover the entire subject.

But it is contended that the phrase, " a rate of interest greater than aforesaid," as it stands in the context, has reference only to the preceding sentence, which relates to banks where no rate of interest is fixed by law; and that hence it leaves the consequences of usury, where such rate is fixed, to be governed wholly by the local law upon the subject. This, in the State

of New York, would, in all such cases, render the contract a nullity, and forfeit the debt. Such the Court of Appeals held to be the law of this case, and adjudged accordingly.

Neither of these views can be maintained. The collocation of the terms in question does not grammatically require such a construction. Viewed in this light, the phrase is as much applicable to both the foregoing clauses as to the next preceding one. The point to be sought is the intent of the law-making power. The offence of usury under this section is as great where the local law does not, as where it does, define the rate of interest. The same considerations apply in both cases. Why should Congress punish in one class of cases, and, so far as its action is concerned, exempt in the other? Why such discrimination? The result would be, that in Pennsylvania, where the contract would be void only as to the unlawful excess, the bank would lose nothing but such excess; while in New York, under a contract precisely the same, except as to the identity of the lender, the entire debt would be lost to the bank. This would be contrary to the plainest principles of reason and justice.

A purpose to produce or permit such a state of things ought not to be imputed to Congress, unless the circumstances are so cogent as to render that result inevitable.

We find nothing within the scope of the subject of that character.

The second proposition — that the State law, including its penalties, would apply if the first proposition be sound — is equally untenable. If the construction contended for were correct, the State law would have no bearing whatever upon the case.

The constitutionality of the act of 1864 is not questioned. It rests on the same principle as the act creating the second bank of the United States. The reasoning of Secretary Hamilton and of this court in *McCulloch* v. *Maryland* (4 Wheat. 316) and in *Osborne* v. *The Bank of the United States* (9 id. 708), therefore, applies. The national banks organized under the act are instruments designed to be used to aid the government in the administration of an important branch of the public service. They are means appropriate to that end. Of

the degree of the necessity which existed for creating them Congress is the sole judge.

Being such means, brought into existence for this purpose, and intended to be so employed, the States can exercise no control over them, nor in any wise affect their operation, except in so far as Congress may see proper to permit. Any thing beyond this is " an abuse, because it is the usurpation of power which a single State cannot give." Against the national will " the States have no power, by taxation or otherwise, to retard, impede, burthen, or in any manner control, the operation of the constitutional laws enacted by Congress to carry into execution the powers vested in the General Government." *Bank of the United States* v. *McCulloch, supra ; Weston and Others* v. *Charleston,* 2 Pet. 466 ; *Brown* v. *Maryland,* 12 Wheat. 419 ; *Dobbins* v. *Erie County,* id. 419.

The power to create carries with it the power to preserve. The latter is a corollary from the former.

The principle announced in the authorities cited is indispensable to the efficiency, the independence, and indeed to the beneficial existence, of the General Government ; otherwise it would be liable, in the discharge of its most important trusts, to be annoyed and thwarted by the will or caprice of every State in the Union. Infinite confusion would follow. The government would be reduced to a pitiable condition of weakness. The form might remain, but the vital essence would have departed. In the complex system of polity which obtains in this country, the powers of government may be divided into four classes : —

Those which belong exclusively to the States ;

Those which belong exclusively to the National Government ;

Those which may be exercised concurrently and independently by both ;

And those which may be exercised by the States, but only with the consent, express or implied, of Congress.

Whenever the will of the nation intervenes exclusively in this class of cases, the authority of the State retires and lies in abeyance until a proper occasion for its exercise shall recur. *Gilman* v. *Philadelphia,* 3 Wall. 713 ; *Ex parte McNeil,* 13 id. 240.

The power of the States to tax the existing national banks lies within the category last mentioned.

It must always be borne in mind that the Constitution of the United States, "and the laws which shall be made in pursuance thereof," are "the supreme law of the land" (Const., art. 6), and that this law is as much a part of the law of each State, and as binding upon its authorities and people, as its own local constitution and laws.

In any view that can be taken of the thirtieth section, the power to supplement it by State legislation is conferred neither expressly nor by implication. There is nothing which gives support to such a suggestion.

There was reason why the rate of interest should be governed by the law of the State where the bank is situated; but there is none why usury should be visited with the forfeiture of the entire debt in one State, and with no penal consequence whatever in another. This, we think, would be unreason, and contrary to the manifest intent of Congress.

Where a statute prescribes a rate of interest, and simply forbids the taking of more, and more is contracted for, the contract is good for what might be lawfully taken, and void only as to the excess. *Burnhisel* v. *Firman, Assignee,* 22 Wall. 170; *German* v. *Calvert,* 12 Serg. & R. 46. Forfeitures are not favored in the law. Courts always incline against them. *Marshall* v. *Vicksburg,* 15 Wall. 156. When either of two constructions can be given to a statute, and one of them involves a forfeiture, the other is to be preferred. Vattel, 20th Rule of Construction.

Where a statute creates a new offence and denounces the penalty, or gives a new right and declares the remedy, the punishment or the remedy can be only that which the statute prescribes. *Stafford* v. *Ingersoll,* 3 Hill, 38; *First National Bank of Whitehall* v. *Lamb,* 57 Barb. 429.

The thirtieth section is remedial as well as penal, and is to be liberally construed to effect the object which Congress had in view in enacting it. *Gray* v. *Bennet,* 3 Met. 539.

The forty-sixth section of the banking act of Feb. 25, 1863, 12 Stat. 679, declared that reserving or taking more than the interest allowed should "be held and adjudged a forfeiture of

the debt or demand." In the act of 1864 the forfeiture of the debt is omitted, and there is substituted for it the forfeiture of the interest stipulated for, if it had only been reserved, and the recovery of twice the amount where the interest had been actually paid.

In the Revised Statutes of the United States of the 22d of June, 1874, 1011, the provisions of the thirtieth section of the act of 1864 are divided into two sections, and the language is so changed as to render impossible in that case the same construction as that of the thirtieth section contended for by the counsel of the defendant in error in this case.

In the "Act to amend the usury laws of the District of Columbia," of the 22d of April, 1870 (16 Stat. 91), it is provided that six per cent per annum shall be the lawful rate of interest, but that parties may contract for ten per cent; and that, if more than ten per cent be contracted for, the entire interest shall be forfeited, and that only the principal debt shall be recoverable. It is further declared, that, if the unlawful interest has been paid, it may be recovered back, provided it be sued for within a year.

It is declared in the last section that this act shall not affect the banking act of 1864.

This later legislation shows the spirit by which Congress was animated in passing the thirtieth section of the act here under consideration, and is not without value as affording light whereby to ascertain the true meaning of that section, if there could otherwise be any doubt upon the subject.

This section has been elaborately considered by the highest court of Massachusetts, of Pennsylvania, of Ohio, and of Indiana. *Davis, Receiver,* v. *Randall,* 115 Mass. 547; *Central Nat. Bank* v. *Pratt,* id. 539; *Second Nat. Bank of Erie* v. *Brown,* 72 Penn. 209; *First Nat. Bank of Columbus* v. *Gurlinghouse,* 22 Ohio St. 492; *Wiley et al.* v. *Starbuck,* 44 Ind. 298. In all these cases, views were expressed in conflict with those maintained in the *First Nat. Bank of Whitehall* v. *Lamb et al.,* 50 N. Y. 100. This adjudication controlled the result of the litigation between these parties.

Upon reason and authority, we have no hesitation in coming to the conclusion that there is error in the case before us.

The plaintiff below was entitled to recover the principal of the note sued upon, less the amount of the interest unlawfully reserved. Whether he was entitled to recover interest upon the amount of the principal so reduced, after the maturity of the note, is a point which has not been argued, and upon which we express no opinion.

*The judgment of the Court of Appeals is reversed, and the case will be remanded with directions to proceed in conformity with this opinion.*