THE STATE OF MONTANA, RESPONDENT, v. THE THOMAS CRUSE SAVINGS BANK, APPELLANT.

[Submitted March 24, 1898.   Decided April 11, 1898.]

Section 4061 of the Political Code, which imposes a license upon banks and banking institutions doing business in this state, does not conflict with Section 11 of Article 15 of the State Constitution, which provides that "no [company or corporation formed under any other country, state or territory, shall have, or be allowed to exercise or enjoy within this state any greater rights or privileges than those possessed or enjoyed by corporations of the same or similar character created under the laws of the state," although national banks are not subject to the license.

*Appeal from District Court, Lewis and Clarke County.  S. H. McIntire, Judge.*

ACTION by the State against the Thomas Cruse Savings

Bank.  Judgment for plaintiff, and defendant appeals.  Affirmed.

Statement of the case by the justice delivering the opinion.

The defendant is a corporation engaged in the banking business in the City of Helena.  This action is brought to recover of the defendant the sum of $800, alleged to be due for license under the provisions of Section 4061 of the Political Code, which imposes upon banks and banking institutions a license for carrying on such business in this state.

The answer avers that the defendant is not subject to the imposition and payment of the license claimed in this suit under the statute aforesaid, for the reason that national banks organized under the laws of the United States, during all the time for which said license is claimed were, and still are, doing a like business as that carried on by the defendant, in competition with the defendant, and which said national banks were not and are not subject to the payment of such license under the law imposing the license upon this defendant.

The defendant claims that the law imposing a license upon it in this case is void, and of no binding force and effect, because it is in conflict with Section 11, Article 15 of the constitution of the state, which is as follows:

"No foreign corporation shall do any business in this state without having one or more known places of business, and an authorized agent or agents in the same, upon whom process may be served.  And no company or corporation formed under the laws of any other country, state or territory, shall have, or be allowed to exercise, or enjoy within this state any greater rights or privileges than those possessed or enjoyed by corporations of the same or similar character created under the laws of the state."

The plaintiff filed a general demurrer to the answer, which demurrer having been sustained by the court, and the defendant declining to further plead, judgment was rendered against it in accordance with the prayer of the complaint, from which judgment the defendant appeals.

*T. J. Walsh,* for Appellant.·

*C. B. Nolan,* for the State.

PEMBERTON, C. J.—It is conceded that national banks cannot be required, under the section of our code referred to in the statement, to pay the license imposed by such section upon the defendant. It is, therefore, contended by counsel that national banks are corporations ''formed under the laws of another country, state or territory,'' within the contemplation of Section 11, Article 15 of the constitution of the state; and that, as such corporations may do business in this state without being liable for the license imposed by said section of the code upon the defendant, the section of the statute in question is void, because, in violation of said section of ·the constitution of the state, it allows national banks, which are organized under the laws of the United States, ''to exercise or enjoy within this state greater rights or privileges than those possessed or enjoyed by corporations of the same or similar character created under the laws of the state.'' It is claimed by counsel that the statute of the state imposing this license discriminates in favor of national banks and against the defendant, and is, therefore, in conflict with the clause of the state constitution quoted above.

It is not denied, and in view of the authorities it cannot be questioned at this late day, that national banks are necessary agencies and ''instruments designed to be used to aid the general government in the administration of an important branch of the public service. They are means appropriate to that end.'' (*Farmers' Nat. Bank* v. *Dearing,* 91 U. S. 29; *National Commercial Bank of Mobile* v. *Mayor, etc., of City of Mobile,* 62 Ala. 284; *McCulloch* v. *Maryland,* 4 Wheat. 316; *Osborn* v. *Bank,* 9 Wheat. 740; 1 Desty on Taxation, page 75; Cooley on Taxation (2d Ed.) page 83.) The question is, then, can the state tax such agencies of the general government, and, if so, what is the extent of the power of the state to tax them?

In *McCulloch* v. *Maryland*, 4 Wheat. 416, Chief Justice Marshall, speaking of the power of a state to tax national banks, said: "It may be objected to this definition that the power of taxation is not confined to the people and property of a state. It may be exercised upon every object brought within its jurisdiction. This is true. But to what source do we trace this right? It is obvious that it is an incident of sovereignty, and is co-extensive with that to which it is an incident. All subjects over which the sovereign power of a state extends are objects of taxation, but those over which it does not extend are, upon the soundest principles, exempt from taxation. This proposition may almost be pronounced self-evident."

The sovereignty of a state extends to everything which exists by its own authority, or is introduced by its permission; but does it extend to those means which are employed by congress to carry into execution powers conferred on that body by the people of the United States? We think it demonstrable that it does not. Those powers are not given by the people of a single state. They are given by the people of the United States to a government whose laws, made in pursuance of the constitution, are declared to be supreme. Consequently, the people of a single state cannot confer a sovereignty which will extend over them.

"If we measure the power of taxation residing in a state by the extent of sovereignty which the people of a single state possess and can confer on its government, we have an intelligible standard applicable to every case to which the power may be applied. We have a principle which leaves the power of taxing the people and property of a state unimpaired, which leaves to a state the command of all its resources, and which places beyond its reach all those powers which are conferred by the people of the United States on the government of the Union, and all those means which are given for the purpose of carrying those powers into execution. We have a principle which is safe for the states, and safe for the Union. We are relieved, as we ought to be, from clashing sovereignty; from

interfering powers; from a repugnancy between a right in one government to pull down what there is an acknowledged right in another to build up; from the incompatibility of a right in one government to destroy what there is a right in another to preserve.   We are not driven to the perplexing inquiry, so unfit for the judicial department, what degree of taxation is the legitimate use, and what degree may amount to the abuse of the power ?   The attempt to use it on the means employed by the government of the Union, in pursuance of the constitution is itself an abuse, because it is the usurpation of a power which the people of a single state cannot give.''

''We find then, on just theory, a total failure of this original right to tax the means employed by the government of the Union for the execution of its powers.   The right never existed, and the question whether it has been surrendered cannot arise.''

In *Weston* v. *City of Charleston,* 2 Pet. 171, this great jurist, reaffirming the doctrine so forcibly expressed in *McCulloch* v. *Maryland,* summarizes his views of this important question as follows:   ''This subject was brought before the court in the case of *McCulloch* v. *Maryland,* 4 Wheat. 316, when it was thoroughly argued, and deliberately considered. The question decided in that case bears a near resemblance to that which is involved in this.   It was discussed at the bar in all its relations, and examined by the court with its utmost attention.   We will not repeat the reasoning which conducted us to the conclusion thus formed; but that conclusion was that 'all subjects over which the sovereign power of a state extends, are objects of taxation; but those over which it does not extend are, upon the soundest principles, exempt from taxation.'', 'The sovereignty of a state extends to everything which exists by its own authority, or is introduced by its permission,' but not 'to those means which are employed by congress to carry into execution powers conferred on that body by the people of the United States.'   'The attempt to use' the power of taxation 'on the means employed by the government of the Union in pursuance of the constitution, is itself an abuse, because it

is the usurpation of a power which the people of a single state cannot give.' The court said in that case that 'the states have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operation of the constitutional laws enacted by congress, to carry into execution the powers vested in the general government.' We retain the opinions which were then expressed.''

The doctrine announced by the great Marshall in those cases has been followed by the courts of this country, both federal and state, down to the present time, and may now be considered so well settled as not to admit of argument. (1 Desty on Taxation, 75; Cooley on Taxation (2d Ed.) 82 *et seq.*, and authorities cited in the notes.)

Now, then, if national banks are corporations formed under the laws of another country, state, or territory, as claimed by the defendant, and are agencies of the general government, designed to be used to aid it in the administration of an important branch of the public service, and as such agencies cannot be taxed by the state except in so far as congress shall expressly permit, does it follow that the law imposing the license on the defendant in this case, and not on national banks, is in conflict with Section 11, Article 15, of the constitution of the state ?

This clause of the constitution, it is conceded, was intended to prevent discrimination by the legislature in favor of foreign corporations against corporations created under the laws of the state. But what corporations did the framers of the constitution have in view when they used the words in this clause, ''corporations formed under the laws of any other country, state or territory ?'' They certainly had in contemplation those corporations ''over which the sovereign power of a state extends.''. They could not have had in contemplation those companies, corporations and agencies organized by the general government for government purposes, which the sovereign power of the state had no authority to tax except by special permission of congress. The framers of the constitution were not ignorant of the principles underlying our system of gov-

ernment.   They knew that a law of the federal government, constitutionally enacted, was the supreme law of the land, and was binding upon the constitutional convention as well as the legislature of the state.   They adopted this clause of the constitution, having in view such corporations as might exist by authority of the state, or might be introduced into the state by its permission.   National banks are not such corporations. They are organized by the general government to aid in the administration of an important branch of government.   They are established and authorized to do business in the state, not with the permission of, but in spite of, the state, and are not subject to the laws or constitution of the state in the transaction of their business, and cannot be taxed upon their property, except as congress may expressly permit.   If the clause of the state constitution and the statute in question had both provided in express terms that national banks should pay a license, like banking corporations created under the laws of the state, to entitle them to do business in the state, then, without doubt, both such clause and statute would have been null and void in that respect, because both would have been in conflict with the laws of congress in relation to such federal agencies.

We cannot agree with counsel that the law imposing the obligation upon the defendant in this case to pay a license to enable it to carry on its business in the state, without imposing the same duty on national banks, thereby discriminates in favor of the latter corporation.   Legislative discrimination between corporations, persons, or things, occurs when all of such subjects of legislation exist by authority of, or are introduced into the state by its permission, and are, consequently, rightful subjects of the sovereign control or power of the state. The legislature cannot legally, or in legal contemplation, discriminate for or against a class of persons, corporations, or property, unless such subjects are all within the sovereign power of the state for legislative purposes.   National banks, for the reasons given above, are such governmental agencies as do not come within the sovereign power of the state for legislative purposes, except in so far as congress has expressly

permitted.    Being such governmental agencies, national banks cannot be held to be "of the same or similar character" as the defendant corporation and banking corporations created under the laws of the state.    The rule announced in the case of *Criswell* v. *Montana Central Railway Co.*, 18 Mont. 167, 44 Pac. 525, is inapplicable to this case.

Counsel for defendant contends that, if national banks are exempt, under the law, from the license tax imposed upon defendant because they are federal agencies, then the Northern Pacific Railroad Company, being a federal instrumentality, is also exempt from state taxation.    The right of the state to tax the property of railroads incorporated by congress is well settled by the courts.    In the cases holding that national banks are federal agencies, or means designed to aid in the administration of an important branch of government, it is not held that the property of such institutions may not be taxed by the state.    In *McCulloch* v. *Maryland* it was held that the tax "was not upon the property of the bank, but upon one of its operations; in fact, upon its right to exist.    It was a direct impediment in the way of a governmental operation performed through the bank as an agent.    It was a very different thing, both in its nature and effect, from a tax on the property of the bank.    It was a tax on the operations of the bank, and is, consequently, a tax on the operations of an instrument employed by the government of the Union to carry its powers into execution."    (*Railroad Co.* v. *Peniston*, 18 Wall. 5; *Osborn* v. *Bank*, 9 Wheat. 740.)

In *Railroad Co.* v. *Peniston*, the court said:    "It is, therefore, manifest that exemption of federal agencies from state taxation is dependent, not upon the nature of the agents, or upon the mode of their constitution, or upon the fact that they are agents, but upon the effect of the tax; that is, upon the question whether the tax does, in truth, deprive them of power to serve the government as they were intended to serve it, or does hinder the efficient exercise of their power.    A tax upon their property has no such necessary effect.    It leaves them free to discharge the duties they have undertaken to perform.

A tax upon their operations is a direct obstruction to the exercise of federal powers."

Judge Cooley says: "The mere fact that a corporation receives its charter and pecuniary or other aid from the United States does not fix its character as a federal agency, nor does the fact that the United States sometimes makes use of it for its purposes, as it might of a similar convenience brought into existence in some other way. And a state may tax the property of federal agencies with other property in the state, and as other property is taxed, when no law of congress forbids, and when the effect of the taxation will not be to defeat or hinder the operations of the national government." (Cooley on Taxation (2d Ed.) 85.) "At any rate, the Supreme Court of the United States has settled the question that national banks cannot be taxed by a state except in so far as congress has expressly permitted, and that the property of railroad companies organized and incorporated by congress may be taxed by the state." (Cooley on Taxation, 85, and notes.)

We are unable to agree with the contention of counsel that the statute imposing a license on the defendant corporation and like corporations created under the laws of the state is in conflict with the article of the constitution of the state invoked in this controversy, because it does not impose a like liability upon national banks.

We cannot agree with the argument that the license law of the state, imposing liabilities upon corporations created under the laws of the state, is unconstitutional and void because it does not impose like liabilities and burdens upon certain designated agencies of the general government over which the state has no sovereign power. Because the state has no power to burden the necessary governmental agencies with a license tax is no reason why it may not impose such liability upon corporations, companies, or persons within the sphere of its power, because they are within the state by virtue of its laws or its permission.

The judgment appealed from is affirmed.

*Affirmed.*

HUNT, J., concurs.

PIGOTT, J.   I concur in the result announced in the fore-
going opinion.