DOLLEY, State Bank Com'r of Kansas, et al. v. ABILENE NAT. BANK, OF ABILENE, KAN., et al.†

(Circuit Court of Appeals, Eighth Circuit. May 20, 1910.)

No. 3,331.

1. CONSTITUTIONAL LAW (§ 211*)—EQUAL PROTECTION OF LAWS—VALIDITY OF STATE STATUTES.

The provision of the fourteenth constitutional amendment that no state shall "deny to any person within its jurisdiction the equal protection of the laws" does not render state legislation, properly confined within its appropriate sphere, invalid because it does not extend to and embrace objects beyond the state's jurisdiction.

[Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. § 211.*]

2. CONSTITUTIONAL LAW (§ 240*)—BANKS AND BANKING (§ 4*)—KANSAS BANK GUARANTY LAW—CONSTITUTIONALITY.

The bank depositors' guaranty act of Kansas (Laws 1909, c. 61), which authorizes banks incorporated under the laws of the state and possessing prescribed qualifications to join in contributing to and maintaining a fund for securing certain classes of their depositors against loss in case of the insolvency of any of their number, is not unconstitutional as denying to the national banks within the state the equal protection of the laws; there being nothing in the statute discriminating against them, and the only reason they cannot accept its provisions being that, because of the duties and obligations prescribed by the laws of the United States under which they are created, they cannot subject themselves to the jurisdiction and authority of the state. Nor is such act unconstitutional on the ground that its effect may be to attract depositors from the national to the guaranteed banks, and thus increase competition with the national

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied September 20, 1910.

banks, and impair their efficiency as instrumentalities of the national government; such effect, if any, being merely indirect and incidental.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 688–699; Dec. Dig. § 240;* Banks and Banking, Cent. Dig. § 3; Dec. Dig. § 4.*]

Appeal from the Circuit Court of the United States for the District of Kansas.

Suit in equity by the Abilene National Bank, of Abilene, Kan., and others, against J. N. Dolley, as Bank Commissioner of the State of Kansas, and another. From an interlocutory order granting a preliminary injunction (175 Fed. 365), defendants appeal. Reversed.

A. C. Mitchell, G. H. Buckman, and Fred S. Jackson, for appellants. John L. Webster and Chester I. Long (B. P. Waggener, J. W. Gleed, and John L. Hunt, on the brief), for appellees.

Before VAN DEVANTER, HOOK, and ADAMS, Circuit Judges.

HOOK, Circuit Judge. One hundred and fifty national banks domiciled and doing business in Kansas sued the Bank Commissioner and the Treasurer of that state to enjoin them from carrying into effect a Kansas statute, approved March 6, 1909, known as the "Bank Depositors' Guaranty Act" (Laws 1909, c. 61). At the instance of the banks the Circuit Court granted a temporary injunction, and the state officers took this appeal.

The questions before us require no more than a brief outline of the provisions of the statute. There are many details of the guaranty scheme of which much complaint is made; but we think they are so clearly matters with which the national banks have no legal concern, or are so manifestly within the legislative province of the state, it is unnecessary to mention them. The statute authorizes banks incorporated under the laws of the state and possessing prescribed qualifications to join in contributing to and maintaining a fund for securing certain classes of their depositors against loss. The administration of the law is committed to the Bank Commissioner; the custody of the fund to the State Treasurer. Whether a bank shall become a party to the scheme is optional, not compulsory. Its desire to join is signified by a resolution of its board of directors, authorized by its stockholders. If upon an examination of its affairs by the Bank Commissioner it is found to be qualified, it then contributes to the permanent guaranty fund a sum in bonds or cash proportioned to the deposits to be guaranteed, and receives a certificate that it has complied with the provisions of the act and "that its depositors are guaranteed by the bank depositors' guaranty fund of the state of Kansas." The permanent fund is raised to a fixed amount by the initial payments, and, if necessary, by annual assessments of one-twentieth of 1 per cent. of the guaranteed deposits in each bank, less capital and surplus; and any depletion of the fund caused by payments to depositors in insolvent banks is cared for by like assessments, not exceeding five in any calendar year. When a guaranteed bank, so called, becomes insolvent, the Bank Commissioner takes charge, winds up its affairs, and applies its assets and the moneys realized from the liability of its stockholders.

When these are exhausted, balances still due guaranteed depositors are paid in full from the guaranty fund, if it is sufficient, and, if not, then by continued assessments, not exceeding five annually, as above stated, upon all banks which are parties to the plan.    It is also provided that national banks may avail themselves of the act upon compliance with the prescribed conditions.

The visitorial power of the State Bank Commissioner over the guaranteed banks, and his control of their liquidation in case of insolvency, including the authority to appoint receivers, are radically inconsistent with the jurisdiction of the Comptroller of the Currency conferred by Congress over national banks.    There are other points of conflict in the operation of the Kansas statute and the national banking laws, and it is obvious that the national banks cannot lawfully avail themselves of the provisions of the state enactment.    Without further and appropriate legislation by Congress, they cannot throw off the duties and obligations prescribed by the law of their creation, or enter into engagements that will subject their corporate affairs to the supervision and control of another sovereignty.    This view was expressed by the Attorney General of the United States in an opinion delivered April 6, 1909.    The Kansas statute should, therefore, be regarded as though it related exclusively to banks incorporated under the laws of the state.

In their final analysis the objections of the national banks to the Kansas statute are reduced to two propositions: First, that, since they cannot avail themselves of the provisions of the statute, it operates to deny them the equal protection of the laws contrary to the fourteenth amendment to the Constitution; and, second, that the effect of the guaranty plan will be to attract depositors from the national banks to the guaranteed state banks, and will therefore impair the efficiency of the former as instrumentalities of the national government.    Counsel admit this to be their position.    The federal questions presented by these propositions constitute the ground of jurisdiction of the Circuit Court, and upon their soundness rests the temporary injunction it granted.

The national banks owe their existence to the laws of the United States, and in respect of the things which pertain to supervision and control by the sovereignty which created them they are as much beyond the jurisdiction of Kansas as though they were domiciled in Maine or California.    Their exclusion from the operation of the statute in question is not from any design on the part of the state to discriminate against them, but results from the limitation of governmental powers. Because of their origin and the paramount authority of Congress, they are not, in matters inhering in the character of their corporate structures, within the legislative province of the state.    The state can neither take away the essential powers granted them by Congress nor confer others that are inconsistent.    Its legislation is necessarily limited to objects within its jurisdiction.    The fourteenth amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."    A conclusive answer to the objection to the Kansas statute now being considered would seem clearly to appear from the face of the amendment itself.    A most extraordinary

condition would exist if the legislation of the states properly confined within its appropriate sphere were to be held invalid because it does not extend to and embrace objects beyond their jurisdiction. A legislative *impasse* would be created. Neither the nation nor the states could move forward; the former because power over matters purely of state concern is not conferred by the Constitution, and the latter because, under the construction now urged upon us, they can affect none if they cannot affect equally all within and without their jurisdiction. Of course, such a construction is inadmissible. As Mr. Justice Field observed in Missouri Railway Co. v. Mackey, 127 U. S. 205, 8 Sup. Ct. 1161, 32 L. Ed. 107:

"The greater part of all legislation is special, either in the objects sought to be attained by it, or in the extent of its application."

The amendment does not profess to secure to all persons in the United States nor all persons in the same state the benefit of the same laws. Great diversities in the character of laws may exist in two states separated by an imaginary line, and there may also be such diversities. in different parts of the same state. Missouri v. Lewis, 101 U. S. 22, 25 L. Ed. 989. Jurisdictional limits are an obvious and sufficient reason for lack of universal uniformity in legislation. The equality clause of the amendment does not require indiscriminate operation of state laws, but proceeds upon due consideration of the relations of persons to the state and to the legislation in question.

"It does not prohibit legislation which is limited, either in the objects to which it is directed or by the territory within which it is to operate. It merely requires that all persons subjected to such legislation shall be treated alike under like circumstances and conditions, both in the privilege conferred and the liability imposed." Magoun v. Illinois Trust & Savings Bank, 170 U. S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037; Home Insurance Company v. New York, 134 U. S. 594, 10 Sup. Ct. 593, 33 L. Ed. 1025; Hayes v. Missouri, 120 U. S. 68, 7 Sup. Ct. 350, 30 L. Ed. 578.

In Barbier v. Connolly, 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 923, it was said:

"Class legislation, discriminating against some and favoring others, is prohibited; but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects all persons similarly situated, is not within the amendment."

Such has been the consistent holding of the Supreme Court. This is not the ordinary case of classification for legislative purposes. The power of a state to classify implies jurisdiction of the various objects to be classified, and the voluntary selection of some of them for inclusion within the law. Even in such cases a classification, when made, will be upheld, whenever it is not purely arbitrary or capricious, but proceeds upon some difference which has a just and reasonable relation to the purpose sought to be accomplished. Railway Co. v. Ellis, 165, U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666. But were this a case of classification, what line of division between corporations included and those excluded from the operation of a statute could be more clear or more necessary than that which marks the very boundary of the legislative power? A state has the right to confer corporate powers

upon its own corporations, and its action cannot be held in contravention of the equality clause of the fourteenth amendment merely because like corporations of the United States cannot, by reason of their organic structure and the duties they owe their creator, avail themselves of them. The state of Kansas did not single out national banks as the special object of hostile or discriminative legislation, and no such conclusion can be helped out by averments of intention in a bill of complaint.

It is urged that the statute is void because the effect of its operation will impair the efficiency of the national banks as instrumentalities of the national government by attracting depositors from them to the guaranteed state banks. If this contention is sound, and the statute falls, then all state legislation designed to improve banking methods and to maintain the local institutions on a sound basis and secure the depositors from loss is likewise void. Indeed, it will be impossible to uphold even the creation of banking corporations by the states, for it can be said with equal if not greater reason that by merely giving them corporate existence and allowing them to enter the field of competition for business they deprive the national banks of depositors they would otherwise secure and thereby impair their efficiency. To state the proposition contended for is to demonstrate its unsoundness.

That Congress may create corporations for the execution of the powers conferred by the Constitution is well settled, and the corporations so created are fitly termed agencies or instrumentalities of the government. Familiar examples are national banks for carrying on the fiscal operations of the United States, and railroads and bridges for promoting interstate commerce. McClellan v. Chipman, 164 U. S. 347, 17 Sup. Ct. 85, 41 L. Ed. 461; Mercantile National Bank v. New York, 121 U. S. 138, 7 Sup. Ct. 826, 30 L. Ed. 895; McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579; Pacific Railroad Removal Cases, 115 U. S. 1, 5 Sup. Ct. 1113, 29 L. Ed. 319; Luxton v. North River Bridge Co., 153 U. S. 525, 14 Sup. Ct. 891, 38 L. Ed. 808. It is doubtful that it ever occurred to a railroad corporation chartered by Congress to urge that a state statute providing for public aid to a railroad corporation organized under the laws of the state was void, because its ultimate effect would be to create an unfair competition and deprive the former of business, thereby lessening its efficiency as a governmental agency. The contention made here is not different in principle. Congress may prescribe the powers and legislate concerning the corporations it creates; but it has never attempted to set an unalterable copy in those particulars for corporations organized under state laws.

The effect of the Kansas statute upon the business of the national banks will at the most be indirect and incidental. Whether there will be any appreciable effect at all depends upon the individual views of depositors, which ordinarily are influenced by many things pertaining to banks and bankers and their methods of conducting business. There can be none in a legal sense of which a court can take cognizance in a case like this. Ground for complaint would exist if the statute had, for instance, made it an offense to deposit funds in national banks,

or subjected them to a higher rate of taxation than that imposed on like deposits in state institutions, or in some other perceptible way had evinced an evil and discriminating purpose, or an attempt to subject them to rules inconsistent with those prescribed by Congress. Davis v. Elmira Savings Bank, 161 U. S. 275, 16 Sup. Ct. 502, 40 L. Ed. 700, is an illustration. There a New York statute giving deposits of a certain character a preference in the distribution of the assets of insolvent banks was held to be in conflict with the federal law providing for ratable dividends, and therefore void when attempted to be applied to an insolvent national bank. We have not considered the merits of the guaranty plan, whether practically beneficent, experimental, or illusory. Such matters are for the state Legislature. Our province is confined to the question whether the exercise of its power is within constitutional limits so far as the national banks are concerned. We think the objections they urge are so clearly without foundation, the temporary injunction was improvidently granted.

The order is accordingly reversed.