STATE ex rel. POWELL, Appellant, *v.* STATE BANK OF
MOORE et al., Respondents.

(No. 6,813.)

(Submitted October 8, 1931. Decided October 30, 1931.)

[4 Pac. (2d) 717.]

*Messrs. Freeman, Thelen & Freeman,* for Appellant, submitted a brief; *Mr. Ernest E. Abel,* of Counsel, argued the cause orally.

544

*Messrs Belden & DeKalb*, for Respondents, submitted a brief; *Mr. O. M. Belden* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Carrie E. Powell, owner of ten shares of the capital stock of the State Bank of Moore, made written demand upon H. E. Strong, president, and R. L. Hunter, cashier, for permission to inspect certain enumerated books and records of the bank and, on their refusal, filed her affidavit for a writ of man-

date to compel compliance with her demand. To an alternative writ issued, the respondents interposed a demurrer and motion to quash, on the ground that section 108 of Chapter 89, Laws of 1927, prohibited the inspection demanded.

When the motion to quash came on for hearing, the court declared that, in order intelligently to pass on the question presented, some showing as to the nature of the records in dispute should be made, and thereupon, over the objection of relatrix, Hunter was permitted to inform the court as to their general nature. Thereupon the court sustained the motion and entered judgment of dismissal, from which judgment relatrix has appealed.

It is first urged that the court erred in receiving testimony, as the motion operated only as a demurrer, admitted the truth of all facts alleged, and, consequently, raised no question of fact. Counsel's position as to the nature and effect of the motion is unassailable. (*State ex rel. Lease* v. *Wilkinson,* 55 Mont. 340, 177 Pac. 401; *State ex rel. Duggan* v. *District Court,* 65 Mont. 197, 210 Pac. 1062.) Essential facts, constituting a defense in mandamus proceedings and raising questions which may be tried to a jury (sec. 9853, Rev. Codes 1921) or by the court (*Chumasero* v. *Potts,* 2 Mont. 242; *Bailey* v. *Edwards,* 47 Mont. 363, 133 Pac. 1095), must be pleaded by answer as in civil actions. (Sec. 9852, Id.) However, the rule invoked applies only when such facts are "not disclosed upon the face of the petition" or affidavit. (*Lauer* v. *Clark,* 84 Okl. 206, 202 Pac. 1035, 1036; *Foster* v. *Stewart,* 113 Kan. 402, 214 Pac. 429.) As in civil actions, if a pleading discloses facts on its face which defeat the pleader's alleged right, the pleading is subject to demurrer.

Chapter 89, Laws of 1927, is a codification of our banking laws; section 108 thereof declares: "No stockholder of any bank incorporated under the laws of this State who is not a director shall have the right to inspect the books and records of such bank showing its transactions with any of its customers, but any such stockholder shall have the right to

inspect during business hours the general statement book showing the general assets and liabilities of such bank.''

Mandamus lies only to compel the performance of a clear ▮▮▮▮ duty (*State ex rel. Donlan* v. *Commissioners,* 49 Mont. 517, 143 Pac. 984), and, consequently, in order to bring herself within her statutory right, as defined in the above statute, relatrix should have alleged in her affidavit that the books and records enumerated in her demand did not contain the proscribed information. (49 C. J. 153; *Rosenfeld* v. *Jakways,* 67 Mont. 558, 216 Pac. 776; *Gormley* v. *Day,* 114 Ill. 185, 28 N. E. 693; *Martin* v. *Ingham,* 38 Kan. 641, 17 Pac. 162.) It is apparent to anyone that such records as ''records of notes receivable'' and ''loan and discount records,'' mentioned in the demand for inspection, show transactions with customers, while others may or may not contain such transactions, depending upon bank bookkeeping. The ''general statement book'' excluded from proscription was not mentioned in the demand. It was, therefore, necessary for the trial judge to ascertain, in some manner, the nature of the records enumerated in order to determine whether or not relatrix was, under the statute, entitled to partial relief, and, on his invitation to supply this information, the only objection interposed was that ''there is no issue of fact before the court.''

The facts on which respondents relied in support of their motion were disclosed on the face of the affidavit, but they required elucidation and the method adopted by the court for determining the sufficiency of the affidavit is no more objectionable than reference to a standard dictionary to determine the meaning of obscure words used in a complaint or petition.

There is no intimation in the record that, on the hearing, ▮▮▮ the relatrix challenged, or the trial court considered, the constitutionality of section 108 above. A statute will be presumed constitutional unless the contrary is made to appear beyond a reasonable doubt. (*State ex rel. Pierce* v. *Gowdy,* 62 Mont. 119, 203 Pac. 1115; *State ex rel. Bankers' Trust Co.* v. *Walker,* 70 Mont. 484, 226 Pac. 894), and its validity will not

be determined unless the question of its constitutionality is raised. (*Potter* v. *Furnish,* 46 Mont. 391, 128 Pac. 542.) If the question was not raised, no error was committed by the court in adopting the method it did for determining whether or not the desired inspection came within the prohibition of the statute, or, on finding that it did, in sustaining the motion to quash.

Where it is contended that an Act invades constitutional ▮ rights, a person affected should raise the question of the invalidity of the Act at the earliest opportunity, and failing to do so may constitute a waiver of the right. (6 R. C. L. 95.) However, as the question of waiver is not raised it will be reserved. Relatrix now challenges the constitutionality of section 108 above.

Respondents assert that this question cannot be determined ▮ in mandamus proceedings, which assertion is supported by *People* v. *Supervisors,* 20 Cal. 591; *Wright* v. *Kelley,* 4 Idaho, 624, 43 Pac. 565; and a long line of authorities cited in *L. J. Mueller Furnace Co.* v. *Crockett,* 63 Utah, 479, 227 Pac. 270, 272, under the statement that, "as the granting of the writ is largely a matter of discretion, many courts deny the remedy where it involves the determination as to whether or not a statute is unconstitutional."

We see no good reason why a court, having jurisdiction to determine constitutional questions, should refuse to do so merely because of discretion; but, even if the decisions relied upon are based on sound reason, the rule is not applicable here for two reasons:

First. The courts are open to redress wrongs, and the present application is the only method by which relatrix could safely present the question to the court. An action for damages, which would seem to be the only other method by which the question could be presented otherwise, would be wholly inadequate to accomplish the desired result; if successful in such an action, relatrix would then be compelled to resort to mandamus to secure an inspection. During the interim great loss or irreparable damage might result and the reason for

desiring an inspection no longer exists. (See *Cockburn* v. *Union Bank,* 13 La. Ann. 289.)

Secondly. If section 108, above, did not exist, the right of relatrix would fall within sections 6008 and 6009, Revised Codes 1921. The right of inspection existed at common law and still so exists in the absence of statute. The common-law right was enforceable by mandamus, but the writ did not issue as a matter of right; on application the court could make a careful examination of the reasonableness of the demand, the propriety of the purpose and effect upon the orderly transaction of business of the corporation if inspection was ordered, and, exercising its discretion, would grant or refuse the writ in furtherance of substantial justice.

Where, as here, the common-law right is supplanted by statute and the right of inspection is granted without limitation or exception, there is no room for the inquiry made by the court under the common-law rule, and it would seem that the right is mandatory and the issuance of the writ may be demanded as a matter of right. (See Cook on Corporations, 7th ed., secs. 511–514, and cases cited.) Therefore, under such a statute, the reason for the rule announced in the foregoing cases fails and the rule is not applicable.

The position taken on behalf of relatrix is that section 108, above, is invalid as violative of section 1 of the Fourteenth Amendment to the Constitution of the United States, and section 26, Article V, of our Constitution, in that it is a special law on a subject covered by a general law (secs. 6008, 6009, above) which "can be made applicable," and constitutes an arbitrary and unwarranted classification in that it applies only to state banks, while national banks are not differently situated.

A "special law" which falls within the prohibition of section 26, Article V, above, is defined as one which relates to particular persons or things of a class, or one made for individual cases and for less than a class, or one which relates and applies to particular members of a class, either particularized by express terms of the Act or separated by

any method of selection from the whole class to which the law might, but for such limitation, be applicable. (*State ex rel. Redman* v. *Meyers,* 65 Mont. 124, 210 Pac. 1064.) The prohibition does not extend to a reasonable classification of persons or corporations for regulatory purposes. (*State ex rel. Bray* v. *Long,* 21 Mont. 26, 52 Pac. 645; *State* v. *Hammond Packing Co.,* 45 Mont. 343, 123 Pac. 407.)

The business of banking is a proper subject for regulation under the police power of the state, because of its nature and the relation which it bears to the fiscal affairs of the people and the revenues of the state (7 C. J. 480), and, as its business is so different from that of other corporations, a classification which segregates it from the general law applicable to corporations is usually sustained. (Fletcher on Corporations, secs. 4406 and 4412.)

The "customers" of a bank are in an entirely different situation from those of the ordinary business corporation; their financial standing and affairs may be at the mercy of malicious or designing persons, if the statutory right accorded the stockholders of corporations generally is permitted to be exercised without restriction.

Section 108 prohibits bank officials from divulging the semi-confidential information they receive as to the financial standing of the bank's customers. The classification is reasonable and the Act is not a prohibited "special law" within the meaning of section 26, Article V, of the state Constitution.

But, say counsel, "section 108, supra, confers a privilege on stockholders of a state bank which is not accorded to stockholders of other banks doing business within the state of Montana," which discrimination is condemned in this state. (*Hill* v. *Rae,* 52 Mont. 378, Ann. Cas. 1917E, 210, L. R. A. 1917A, 495, 158 Pac. 826.)

If the above charge was sustainable and was the only constitutional attack which could be made on the legislation, counsel would be without standing in this court, as, in order to raise the question, relatrix must belong to the class discriminated *against.* (*Spratt* v. *Helena Power Transmission Co.,* 37

Mont. 60, 94 Pac. 631.) However, the challenge to the constitutionality of the Act does present the question as to whether or not a discrimination *against* the stockholders ''of any bank incorporated under the laws of this state'' compels decision invalidating the Act.

It is said that: ''Statutes applicable only to certain kinds of banks are usually upheld upon the theory that there is a valid basis for the discrimination. For instance, regulations may apply, in a proper case, to state banks and not to national banks.'' (Fletcher on Corporations, sec. 4412.) But there seems to be no valid reason why an Act for the protection of customers of state banks should not apply equally to national banks; their position is the same; and, therefore, that the Act cannot be upheld on the theory of ''reasonable classification,'' if it could have been made applicable to national banks.

The sole question for determination, then, is as to the power of a state to regulate the internal affairs and operation of national banks. In support of this power counsel for relatrix assert that national banks doing business in the state are, ''for all practical purposes,'' citizens of the state, citing *Guthrie* v. *Harkness*, 199 U. S. 148, 4 Ann. Cas. 433, 50 L. Ed. 130, 26 Sup. Ct. Rep. 4, 5, and that such regulation as is found in sections 6008 and 6009 may be enforced as to national banks by mandamus, citing 6 Thompson on Corporations, 420; *Harkness* v. *Guthrie*, 27 Utah, 248, 107 Am. St. Rep. 664, 1 Ann. Cas. 129, 75 Pac. 624, and cases therein cited; *Large* v. *Consolidated Nat. Bank*, (C. C.) 137 Fed. 168; *Murray* v. *Walker*, 156 Ky. 536, Ann. Cas. 1915C, 363, 161 S. W. 512.

All of the authorities cited, with the possible exception of *Guthrie* v. *Harkness* and *Winter* v. *Baldwin*, 89 Ala. 483, 7 South. 734, cited in the *Harkness Case*, refer and apply strictly to the enforcement of rights under the common law and federal statutes. The decision in the *Harkness Case* is grounded on the common-law right, which the court declares applies ''unless restricted by statute,'' and the finding that the statute of Utah, similar to our sections 6008 and 6009, ''does not restrict the

common-law right but is in harmony therewith." The decision, therefore, does not justify the assertion that an Act such as we have under consideration, which restricts—almost to the point of elimination—the common-law right, can be made to apply to national banks.

That the Harkness decision but upheld the common-law right is made clear by the federal decision, which declared that the state court "held that it was the common-law right of the shareholder * * * and that the same had not been cut down by the Act of Congress regulating the business of national banks."

*Winter* v. *Baldwin* more nearly supports counsel's position, but even there the court declared that the statute considered "is but a slight modification of the rule of the common law," and Justice Clopton dissented on the ground that the statute could not apply to national banks, as such right was not a proper subject of state legislation.

As to the assertion that "for all practical purposes" a national bank is deemed a citizen of the state in which it does business, the federal case cited (199 U. S. 148, 4 Ann. Cas. 433, 50 L. Ed. 130, 26 Sup. Ct. Rep. 4, 5) does not so hold, but merely that "Congress has provided that, for actions against them at law or in equity, they shall be deemed citizens. * * * 25 Stat. 433." Here the rule, *"expressio unius est exclusio alterius,"* applies; citizenship extends no further than that expressly granted by Congress.

"The national banks owe their existence to the laws of the United States, and in respect to things which pertain to supervision and control by the sovereignty which created them they are as much beyond the jurisdiction of Kansas [or Montana] as though they were domiciled in Maine or California" (*Dolley* v. *Abilene Nat. Bank,* 179 Fed. 461, 463, 32 L. R. A. (n. s.) 1065 (C. C. A. 8th Cir.), and are as "independent of state legislation or state interference as the army and navy, and the mint, and the judicial tribunals of the United States" (*Pittsburg* v. *National Bank,* 55 Pa. 45).

"The sovereignty of a state extends to everything which exists by its own authority, or is introduced by its permission," but does not extend to those means which are employed by Congress to carry into execution powers conferred on that body by the whole people of the United States. (*State* v. *Thomas Cruse Sav. Bank*, 21 Mont. 50, 45 L. R. A. 760, 52 Pac. 733, 734.)

Statutes enacted pursuant to the police power, and certain ▓ other powers, of the state, may operate incidentally upon the general business of a national bank, such as those applying to the construction of contracts, the transfer of property, the collection of debts and liability to suit, and the relation of such banks to the community in which they do business, as such banks are subject to state laws which do not run counter to the laws of Congress or the prohibitions of the federal Constitution. (See 7 C. J. 760; 3 Michie on Banks & Banking, 1782.)

National banks, however, are not citizens of the state, in the sense that the state may regulate their internal operations or control them or their officers in the conduct of their business, except as permitted by Congress. "Congress, having power to create a system of national banks, is the judge as to the extent of the powers which should be conferred upon such banks, and has the sole power to regulate and control the exercise of their operations; * * * it must be obvious that their operations cannot be limited or controlled by state legislation." (*Easton* v. *Iowa*, 188 U. S. 220, 47 L. Ed. 452, 23 Sup. Ct. Rep. 288, 293.)

National banks are a part of the general government's financial system, and state statutes relating to banks cannot control them (*Lucas County* v. *Jamison*, (C. C.) 170 Fed. 338); they are "instrumentalities of the federal government, created for a public purpose, and as such necessarily subject to the paramount authority of the United States. It follows that an attempt by a state to define their duties or control the conduct of their affairs is absolutely void, wherever such attempted exercise of authority expressly conflicts with the laws of the United States and either frustrates the purpose of the national

legislation or impairs the efficiency of these agencies of the federal government to discharge the duties, for the performance of which they were created." (*Davis* v. *Elmira Sav. Bank,* 161 U. S. 275, 40 L. Ed. 700, 16 Sup. Ct. Rep. 502, 503.)

Under these positive declarations of the highest court of the land it is held that, as conflicting with the paramount law, an Act requiring all banks of a state, having received deposits from a savings bank and then becoming insolvent, to prefer such savings bank as a creditor, is void as to national banks (*Davis* v. *Elmira Sav. Bank,* above); as is an Act prescribing a penalty for receiving deposits after a bank has become insolvent (*Easton* v. *Iowa,* above). Again, Congress having prescribed the rate of interest which may be charged by a national bank and fixed the penalty for violation as the recovery of double the amount, the remedy is held exclusive, and, although Congress has not spoken on the subject of punishment for usury, state authorities are powerless to punish citizens of the state for a violation of the statute against usury when such violators are officers of a national bank (*Farmers' & M. Nat. Bank* v. *Dearing,* 91 U. S. 29, 23 L. Ed. 196; *Haseltine* v. *Central Nat. Bank of Springfield,* 183 U. S. 132, 46 L. Ed. 118, 22 Sup. Ct. Rep. 50; *Reese* v. *Colquitt Bank,* 12 Ga. App. 472, 77 S. E. 320; *Pauls Valley Bank* v. *Mitchell,* 55 Okl. 170, 154 Pac. 1188); and the fact that a penalty may be recovered in a civil action against a national bank, and not against a state bank, does not render the Act obnoxious to the constitutional requirement of uniformity. (*Ingraham* v. *Merchants' Nat. Bank,* 153 Iowa, 408, 132 N. W. 869.)

Now, while the National Banking Act does not expressly provide for inspection of the books and records of a national bank by a stockholder, as shown above, the common-law right is not abrogated by the federal Act and is recognized by the federal courts as a part of the national regulation of such banks and, in the *Harkness Case,* above, the right of a state court to enforce the common-law right by mandamus was upheld because that right has "not been cut down by the Act of Congress regulating the business of national banks."

While there is no common law of the United States, in the sense of a national customary law, the courts of the United States enforce the law as they find it in the several states and apply the common law, as a national institution, in the interpretation of the Constitution. (*Smith* v. *Alabama,* 124 U. S. 465, 31 L. Ed. 508, 8 Sup. Ct. Rep. 564, 569; *United States* v. *Wong Kim Ark,* 169 U. S. 649, 42 L. Ed. 890, 18 Sup. Ct. Rep. 456.) As state and federal courts administer the law with respect to national banks in their operation under the law, and it is held that the common-law right of inspection exists as to national banks, it seems clear that Congress, instead of declaring the rule with respect to national banks, was content to leave the common law, in this respect, applicable as it found it. Had Congress desired to declare any other rule, it would have done so in the National Banking Act, which constitutes "by itself a complete system for the establishment and government of national banks" (*Cook County Nat. Bank* v. *United States,* 107 U. S. 445, 27 L. Ed. 537, 2 Sup. Ct. Rep. 561, 564), but, as recognized by the federal courts, until the rule is changed by Act of Congress, the common-law right is, in effect, a substantive part of the federal law on the subject. When the rules of the common law have been "acquiesced in for ages, their force and effect cannot be distinguished from statutory law." (*Saul* v. *His Creditors,* 5 Mart. (n. s.) (La.) 569, 16 Am. Dec. 212.)

Had our legislature, then, in 1927, made section 108 applicable to all banks doing business in the state, it would undoubtedly have been void as to national banks as an invasion of the power of Congress to alone regulate these instrumentalities of government and as conflicting with the uniform laws of the national government on the subject.

Having, therefore, included in the operation of the Act the total of the class to which the Act could apply, section 108 above is not violative of the constitutional provisions cited (see *Des Moines Nat. Bank* v. *Fairweather,* 263 U. S. 103, 68 L. Ed. 191, 44 Sup. Ct. Rep. 23), and the court did not err in

holding that, thereunder, relatrix was not entitled to the relief sought.

Judgment affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and ANGSTMAN concur.