STATE, Respondent, *v.* HAMMOND PACKING CO., Appellant.

(No. 3,106.)

(Submitted March 20, 1912.   Decided April 3, 1912.)

[123 Pac. 407.]

*Taxation—Licenses—Oleomargarine—Constitution—Uniformity Clause—Interstate Commerce.*

Licenses—Occupations—Constitutional Law.
1.   Section 1, Article XII, of the Constitution, which authorizes a state license tax on persons and corporations, does not require all occupations to be taxed equally.

Same—Power of Legislature.
2.   The legislature has power to single out dealers in any commodity and compel them to pay a license, and if the burden falls upon all such dealers alike, no one of them may complain of it as repugnant to the uniformity clause of the Constitution.

Same—Statutes—Constitutionality—Interstate Commerce.
3 & 4.   *Held,* that section 2763, Revised Codes, providing that dealers in oleomargarine, butterine, *etc.,* must pay a license fee of one cent per pound on all such merchandise sold, is not obnoxious to the Constitution, nor repugnant to clause 3, section 8 of Article I of the United States Constitution, giving to Congress the power to regulate commerce among the several states.

*Appeal from District. Court, Silver Bow County; John B. McClernan, Judge.*

ACTION by the state against the Hammond Packing Company. Judgment for plaintiff, and defendant appeals. Affirmed.

*Messrs. Gunn, Rasch & Hall,* and *Mr. W. W. Patterson,* submitted a brief in behalf of Appellant. *Mr. M. S. Gunn* argued the cause orally.

Where a license tax is imposed, and there is no provision of law for any supervision, control or regulation of the business, unless the business is of such a nature that it can be restricted or prohibited, the tax will be considered as having been imposed in the exercise of the taxing power of the state. (*Brennan* v. *City of Titusville,* 153 U. S. 289, 38 L. Ed. 719, 14 Sup. Ct. Rep. 829; *State* v. *Ashbrook,* 154 Mo. 375, 77 Am. St. Rep. 765, 48 L. R. A. 265, 55 S. W. 627; *Pabst Brewing Co.* v. *City of Terre Haute,* 98 Fed. 330; *State* v. *Moore,* 113 N. C. 697, 18 S. E. 342; *In re Nichols,* 48 Fed. 164.)

The Constitution provides two methods of taxation for the purpose of revenue—one a tax upon property, and the other a license tax upon persons and corporations doing business. These methods are exclusive, as already shown. There is no authority to tax the right to sell an article, except as the business of which the sale of the article is an incident may be taxed. A tax upon the sale of an article is a tax upon the article itself and a property tax. (*Brown* v. *Maryland,* 12 Wheat. (U. S.) 419, 444, 6 L. Ed. 678; *City of Brookfield* v. *Tooey,* 141 Mo. 619, 43 S. W. 387; *Commonwealth* v. *Brown,* 91 Va. 762, 28 L. R. A. 110, 21 S. E. 762.) If the tax is a property tax, it is clearly illegal, for the reason that the statute, in placing the same tax upon each sale regardless of the value of the article sold, violates the constitutional provision requiring uniformity in taxation of property. The citation of authorities to this proposition seems unnecessary.

As a license tax for revenue solely, it is illegal by virtue of the fourteenth amendment to the Constitution of the United States. The classification of persons and corporations engaged in selling the articles referred to as a separate class is arbitrary and unwarranted. When it is considered that oleomargarine is a wholesome article of food, and is used for the same purpose as butter, lard and cottolene, with which articles it comes in competition, no reason can be asigned for classifying it in a separate class. (See *State ex rel. Wyatt* v. *Ashbrook*, 154 Mo. 375, 77 Am. St. Rep. 765, 48 L. R. A. 265, 55 S. W. 627; *Bell's Gap R. Co.* v. *Pennsylvania*, 134 U. S. 232, 33 L. Ed. 892, 10 Sup. Ct. Rep. 533; *Gulf G. & S. F. R. Co.* v. *Ellis*, 165 U. S. 150, 41 L. Ed. 666, 17 Sup. Ct. Rep. 255; *Limestone Co.* v. *Fagley*, 187 Pa. 193, 67 Am. St. Rep. 579, 42 L. R. A. 442, 40 Atl. 977; *Commonwealth* v. *Taylor* (Ky.), 38 S. W. 10; *Car Co.* v. *State*, 64 Tex. 274, 53 Am. Rep. 758; *In re Flukes*, 157 Mo. 125, 80 Am. St. Rep. 619, 51 L. R. A. 176, 57 S. W. 545; *St. Louis* v. *Russell*, 116 Mo. 248, 20 L. R. A. 721, 22 S. W. 470; *State* v. *Loomis*, 115 Mo. 307, 21 L. R. A. 789, 22 S. W. 350.) The fact that oleomargarine is manufactured from oleaginous substances, and is not a dairy product, is no reason why is should not be allowed to enter into competition with butter, its rival, on fair terms. If butter is sold as butter and oleomargarine is sold as a substitute for butter, then one product is given no advantage over the other, but the imposition of a tax of one cent per pound on the sale of oleomargarine is plainly a discrimination in favor of butter. (*State* v. *Hanson*, 84 Minn. 42, 54 L. R. A. 468, 86 N. W. 768.)

The statute creates a monopoly. It will be noted that the statute imposes a tax of one cent per pound for each of the articles sold. The tax is not imposed for the first sale made, but for each sale. The manufacturer must pay the tax, then the wholesale dealer, and then the retail dealer. The tax is in restraint of trade, prohibitive, and against public policy. (*Barling* v. *West*, 29 Wis. 307, 9 Am. Rep. 576; *City of Carrollton* v. *Bazette*, 159 Ill. 284, 31 L. R. A. 522, 42 N. E. 837; .

*Sipe* v. *Murphy,* 49 Ohio St. 536, 17 L. R. A. 184, 31 N. E. 884; *Connoly* v. *Union Sewer Pipe Co.,* 184 U. S. 540, 46 L. Ed. 679, 22 Sup. Ct. Rep. 431; *Yick Wo* v. *Hopkins,* 118 U. S. 356, 30 L. Ed. 220, 6 Sup. Ct. Rep. 1064; *Morton* v. *Mayor etc. of Macon,* 111 Ga. 162, 50 L. R. A. 485, 36 S. E. 627.)

The statute is an unreasonable interference with interstate commerce. (*Leisy* v. *Hardin,* 135 U. S. 100, 34 L. Ed. 128, 10 Sup. Ct. Rep. 681; *Plumley* v. *Commonwealth,* 155 U. S. 461, 39 L. Ed. 223–225, 15 Sup. Ct. Rep. 154; *Schollenberger* v. *Pennsylvania,* 171 U. S. 1, 43 L. Ed. 49, 18 Sup. Ct. Rep. 757; *City of St. Louis* v. *Wortman,* 213 Mo. 131, 112 S. W. 520–524; *McAllister* v. *State,* 94 Md. 290, 50 Atl. 1046; *Fox* v. *State,* 89 Md. 381, 73 Am. St. Rep. 193, 43 Atl. 775.) As the oleomargarine in question was brought into this state only for the purpose of sale, a tax on each sale is a tax on the article itself, and the burden thus placed on interstate commerce is self-evident. (*Brown* v. *Maryland,* 12 Wheat. (U. S.) 419, 6 L. Ed. 678; *Cook* v. *Pennsylvania,* 97 U. S. 566, 24 L. Ed. 1015.) The fact that the statute in this case applies to all sales of all oleomargarine, wherever manufactured, does not meet the objection we are considering. (*State* v. *Barber,* 136 U. S. 313, 34 L. Ed. 455, 10 Sup. Ct. Rep. 862; *Voight* v. *Wright,* 141 U. S. 62, 35 L. Ed. 638, 11 Sup. Ct. Rep. 855; *American Fertilizer Co.* v. *Board of Agriculture,* 43 Fed. 609; *Ex parte Scott,* 66 Fed. 45.)

*Mr. Albert J. Galen,* Attorney General, and *Mr. W. H. Poorman,* Assistant Attorney General, submitted a brief in behalf of Respondent.

The question of the power of the state in the respects herein involved is fully discussed in *McLean* v. *Arkansas,* 211 U. S. 539, 53 L. Ed. 315, 29 Sup. Ct. Rep. 206, and cases there cited. The statute in question applies indiscriminately to every person, company or corporation selling oleomargarine, and the supreme court of the United States has in the case above cited and many others therein referred to held that the exercise by the state of the power of regulating or licensing is not an invasion of

the federal Constitution. The power of the state has been specifically recognized by the Congress of the United States and in the Act of Congress approved February 9, 1902, 32 Statutes at Large, 193, which Act deals specifically with oleomargarine, *etc.*, and imposes a certain license tax thereon. This Act of Congress imposes a tax upon oleomargarine of ten cents per pound where the same is colored to imitate butter, and of one-fourth of one cent per pound where the same is not colored. The police and licensing powers of the state are as great within the limits of the state as are the powers of Congress within the territory subject to the jurisdiction of the United States. If, then, this law of the state (section 2763) is void as being an invasion of the fourteenth amendment of the Constitution of the United States, the law of Congress must also be void for the same reason. Yet, the supreme court has twice sustained the constitutionality of the law of Congress. (*McCray* v. *United States,* 195 U. S. 27, 1 Ann. Cas. 561, 49 L. Ed. 78, 24 Sup. Ct. Rep. 769; *Cliff* v. *United States,* 195 U. S. 159, 49 L. Ed. 139, 25 Sup. Ct. Rep. 1.)

MR. JUSTICE SMITH delivered the opinion of the court.

The complaint in this action alleges that at all times mentioned the defendant was an Illinois corporation, doing business in the county of Silver Bow and state of Montana; "that on the first day of January, 1904, and upon each succeeding day subsequent thereto, in the years 1904 and 1905, in the county of Silver Bow, state of Montana, the defendant did attempt to carry on, and then and there carried on, the business of selling oleomargarine, butterine, and imitation of cheese." It is further alleged that, between the dates mentioned, the defendant sold certain quantities of oleomargarine, butterine, and imitation of cheese, and has failed to pay the license required by law for carrying on said business. The answer admits the corporate character of the defendant and that during the times mentioned it was doing business in Silver Bow county. It denies

that the defendant sold any butterine or imitation of cheese, and then further alleges as follows:

(1) "That at all the times in the complaint mentioned the defendant had a warehouse and fixed place of business in Silver Bow county, Mont., and carried on in said county the business of selling oleomargarine and other products and merchandise. That at said place of business in said county, between the first day of January, 1904, and the 31st day of December, 1905, the defendant transacted the following business, to wit: Defendant sold and delivered between said dates 40,656 pounds of oleomargarine in said county of Silver Bow, state of Montana.

"(2) That all of said oleomargarine was manufactured outside of the state of Montana, at the city of Chicago, state of Illinois, and the same was contained in packages ranging from 10 to 60 pounds, and shipped from the defendant's factory at Chicago, Ill., to the defendant's warehouse in Silver Bow county, Mont., in said packages.

"(3) That all of the said oleomargarine was stored in the defendant's warehouse in Silver Bow county, Mont., in the same packages in which it was shipped, and was thereafter sold and delivered by defendant in such packages direct from said warehouse in Silver Bow county to the customer and purchaser thereof, and all the said sales and deliveries were made in Silver Bow county, Mont.

"(4) That no part of said oleomargarine herein mentioned was ordered or purchased by said customers until after the arrival of the same in the said county of Silver Bow and storage of the same in defendant's warehouse as aforesaid, and that none of said oleomargarine was shipped from outside the state of Montana direct to any customer, or upon any previous order of any customer.

"(5) Defendant further alleges that section 4064 of the Political Code of Montana is in violation of and in conflict with the fourteenth amendment to the Constitution of the United States, in that the effect thereof is to deprive this defendant

of its property without due process of law and to deny to this defendant the equal protection of the laws."

The district court entered a judgment on the pleadings in favor of the state of Montana, for the sum of $406.56 with interest. Defendant appeals.

The sole question presented to this court is as to the constitutionality of paragraph 13 of section 4064 of the Political Code of 1895, as amended by House Bill No. 80, Laws of 1901, page 144 (Rev. Codes, sec. 2763), under which the license was demanded, which reads as follows: "(13) Every person, company or corporation selling oleomargarine, butterine or imitation of cheese shall pay a license fee of one cent per pound for all these articles sold." Appellant contends that the law is unconstitutional for the following reasons:

(1) Because it is not a valid exercise of the police power of the state.

(2) It is not a valid exercise of the taxing power of the state, for the reason that section 1, Article XII, of the state Constitution, only authorizes the legislature to tax property and to impose a license tax on persons and corporations doing business in this state. It is said that the authority to tax for the purpose of raising revenue is limited by this section, which authorizes but one license tax for doing business.

(3) It is in conflict with the fourteenth amendment to the Constitution of the United States, which declares that no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.

(4) It creates a monopoly in restraint of trade.

(5) It is an unreasonable interference with interstate commerce.

Specifically stated, the objections to the law as a revenue measure are as follows, quoting from the brief of counsel for the appellant:

"(1) Because, if a license, it is not a tax imposed upon persons or corporations doing business, but is a tax imposed upon persons and corporations selling the articles mentioned, which of itself does not constitute doing business.

"(2) Because, if a property tax, it is in violation of the uniformity clause of the Constitution.

"(3) Because the classification made is unwarranted and arbitrary and does not rest upon any reasonable foundation, in consequence of which the statute is in violation of the fourteenth amendment to the Constitution of the United States.

"(4) Because the purpose of the statute is to prohibit and restrain the sale of the articles mentioned, under the guise of a tax for revenue.

"(5) Because the tax is prohibitive, and therefore in violation of the right to liberty, guaranteed by the Constitution.

"(6) Because it is vicious class legislation, clearly discriminatory, and intended to confer upon those making and selling dairy products a monopoly."

It is claimed that the affirmative allegations of the answer raised a material issue of fact, or, at any rate, that the motion for judgment on the pleadings admitted the truth thereof, and, as this contention is not disputed by the attorney general in his brief, we may assume that the allegations of the answer are true. We find in the answer, however, no allegation to justify the conclusion that the statute grants a monopoly in restraint of trade; nor that, in application, it does not operate equally upon all persons in like situations or engaged in like pursuits; nor that it discriminates, in its operation, against the appellant, or in favor of others dealing in similar commodities, or other commodities, such as butter.

1. We shall assume that the Act imposes a license tax for the purpose of raising revenue; that no attempt is made to impose a property tax; and that it is not a police regulation; also, that oleomargarine is a pure and wholesome article of food and commerce, the sale of which cannot be prohibited by law, either directly or by indirection. The sole contention of the attorney

general is that the law may be upheld as a measure exacting a license fee from those engaged in the business of selling oleomargarine.

The Act places dealers in oleomargarine, butterine, and imitation of cheese in a class by themselves for the purpose of calculating a portion of the license fee to be paid by vendors of goods, wares, and merchandise. Section 1 of Article XII of the state Constitution reads, in part, as follows: " * * * The legislative assembly may also impose a license tax, both upon persons and upon corporations doing business in the [1] state." The legislature is not required to tax all occupations equally or uniformly. (*State ex rel. Sam Toi* v. *French,* 17 Mont. 54, 30 L. R. A. 415, 41 Pac. 1078.) The classification does not on its face appear to be arbitrary, unreasonable, or unjust. The legislature has power to single out dealers in oleomargarine, butterine, or imitation of cheese, and compel them to pay a license, and if the burden falls upon all such dealers [2] alike, no one of them is aggrieved. (*Quong Wing* v. *Kirkendall,* 39 Mont. 64, 101 Pac. 250; *Cunningham* v. *Northwestern Imp. Co.,* 44 Mont. 180, 119 Pac. 554.)

During the period mentioned in the complaint, section 4064, Political Code, as amended by the Laws of 1901, was in force. [3] So much of that section as is material here reads as follows: "Sec. 4064. Every person who at a fixed place of business sells any goods, wares and merchandise, drugs or medicines, jewelry or wares of precious metals, whether on commission or otherwise, and all butchers, must obtain from the county treasurer of the county in which the business is transacted, and for each branch of such·business, [a] license, and pay quarterly therefor an amount of money to be determined by the class in which such person is placed by the county treasurer; such business to be classified and regulated by the amount of the monthly average sales made or hiring done, and at the rate following: Those who are estimated to make average monthly sales to the amount: (1) Of one hundred thousand dollars or more, constitute the first class, and must pay seventy-five

dollars per month. [Paragraphs 2 to 12 provide for the payment of graduated licenses of from sixty dollars to one dollar, dependent upon the amount of monthly sales. Paragraph 13 is the one we have under consideration.] (14) Every person who keeps a public weighing or platform scales for hire shall pay a license of ten dollars per year. (15) Every person or persons who is engaged in the business of selling cigarettes, cigarette paper or materials used in the making of cigarettes, except tobacco, shall pay a license of ten dollars per month, in addition to any other license herein provided for.'' Paragraph 15 is evidently a police regulation, as well as a revenue measure.

It is contended that in enacting section 4064, *supra,* and kindred sections, the legislature exhausted the power to impose licenses given it by the Constitution, and for the purposes of this decision we may assume, without deciding, that such was the case. But the appellant goes further and contends that, having enacted the first twelve paragraphs of the section, the legislature was powerless to impose an additional tax on persons engaged in selling oleomargarine at a fixed place of business. This argument is founded in a misconception of the purpose and scope of section 4064. Paragraphs 13 and 15 are as much a part of the section as are the preceding paragraphs. All parts thereof must be read together. The general design of the legislature was to impose a license tax upon persons engaged in selling goods, wares, and merchandise at a fixed place of business, graduating the tax, for the most part, according to the amount of monthly sales; but in case such persons sold oleomargarine, butterine, or imitation of cheese as a part of the goods, wares, and merchandise so handled by them, the proceeds of such sales should not be included in the monthly sales theretofore mentioned, but such persons should pay a tax of one cent per pound for the privilege of selling those articles. It is very clear that the amounts received from the sales of oleomargarine, butterine, or imitation of cheese were not to be included in the monthly sales mentioned in paragraphs 1 to 12,

because the legislature found apt words in paragraph 15 to express its intention to impose an additional license tax on those engaged in selling cigarettes and cigarette material.

We find, then, that the legislature, pursuant to section 1, Article XII, of the Constitution, exercised its authority to impose a license tax on persons and corporations doing business in this state, by enacting: (a) That every person who at a fixed place of business sold any goods, wares, or merchandise, drugs, medicines, jewelry, or wares of precious metals, and all butchers, should pay a graduated license tax in accordance with the amount of their monthly sales; (b) that every person, company, or corporation who also sold oleomargarine, butterine or imitation of cheese should pay a license tax, fixed on a basis of one cent per pound on all such articles sold, not in addition to the license on his or its sales including the sales of those articles, but as a part of the same license, figured on a different basis and not included in the amount of monthly sales; (c) that every person engaged in the business of selling cigarettes or cigarette materials should pay a license of $10 per month in addition to the license on his monthly sales including the sales of those articles. In the preparation of this opinion we have given no thought to the case of a person engaged solely in the business of selling oleomargarine, butterine, or imitation of cheese, and what is said must be read with this in mind.

But it is contended that paragraph 13 of the statute imposes a license tax upon a person or corporation for each sale made in conducting the business, and thereby exacts several licenses for doing a single business. But such is not its purpose or effect. The statute imposes but one license tax for doing business, but the amount thereof is found by making two calculations instead of one. We know of no objection to this method of procedure. Although the terminology of paragraph 13 is somewhat different from that of the preceding paragraphs, we have no doubt that its effect is the same, to-wit, to impose a license tax upon persons and corporations doing business in the state. We have already demonstrated, we think, that no double

taxation, or extra taxation, is imposed upon those who at a fixed place of business sell oleomargarine, butterine, or imitation of cheese, as well as other articles of merchandise. So far as this appellant is concerned, we find no difficulty in holding that one who sells 40,000 pounds of oleomargarine in two years in one county of the state is engaged in the business of selling that article and is "doing business" within the meaning of the constitutional provision above quoted, regardless of the admission in the answer that it is also selling other goods, wares, and merchandise, at the same fixed place of business. The effect of the statute on others who may deal in oleomargarine alone is no concern of the appellant. (*Uihlein* v. *Caplice Commercial Co.*, 39 Mont. 327, 102 Pac. 564.)

2. Having decided that the tax in ·question is a license tax imposed upon persons and corporations doing business in this state as vendors of oleomargarine, for the privilege of carrying on said business, we further hold, on the authority of *Osborne* [4]    v. *Mobile*, 16 Wall. 479, 21 L. Ed. 470, *American Harrow Co.* v. *Shaffer* (C. C.), 68 Fed. 750, and 7 Cyc. 483, that the ·Act is not repugnant to clause 3, section 8, of Article I of the Constitution of the United States, giving to Congress the power to regulate commerce among the several states.

The judgment is affirmed.

*Affirmed.*

Mr. Chief Justice Brantly and Mr. Justice Holloway concur.

Rehearing denied May 3, 1912.

Appeal taken to supreme court of the United States on May 6, 1912.