CONTINENTAL OIL CO. v. WALKER, State Treasurer.

(Circuit Court of Appeals, Ninth Circuit. January 8, 1923.)

No. 3857.

1. Licenses ⬅️15(1)—State may impose license taxes for the privilege of conducting any particular business.

A state has power to impose a license tax on dealers in any commodity, and may make the amount determinable by the amount of business done.

2. Licenses ⬅️8(1)—Statute held not retroactive.

A statute imposing a license tax on dealers in a commodity is not retroactive because it makes the amount of the tax for the current year in which it is enacted determinable by the amount of business done by the licensee during the entire calendar year.

3. Licenses ⬅️7(4)—State statute imposing license tax held constitutional.

That a statute imposing a license tax on dealers in a commodity makes the amount of business done during the current year, both before and after

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

its enactment, the measure of the tax for that year *held* not to render it unconstitutional for inequality, as between those previously in business and those who might enter the business after its enactment.

In Error to the District Court of the United States for the District of Montana; George M. Bourquin, Judge.

Action at law by the Continental Oil Company against J. W. Walker, as State Treasurer of the State of Montana. Judgment for defendant, and plaintiff brings error. Affirmed.

Gunn, Rasch & Hall, of Helena, Mont., for plaintiff in error.

Wellington D. Rankin, Atty. Gen., for defendant in error.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge. The court below sustained a demurrer to a complaint, and entered judgment against the plaintiff in an action brought to recover $13,058.74, license tax, paid by the plaintiff under protest. The complaint alleged that the plaintiff was a Colorado corporation engaged in the business of selling gasoline and distillate in Montana; that between January 1, 1921, and March 4, 1921, it sold and delivered in Montana 1,305,874 gallons of gasoline and distillate; that on the demand of the defendant, the state treasurer of Montana, the plaintiff paid as license tax the sum of one cent per gallon for each gallon so sold during that period; and that the license tax was imposed under chapter 156 of the 1921 Session Laws of Montana.

Chapter 156 was approved and became effective March 5, 1921. Section 3 requires that every dealer in gasoline and distillate "shall for the year 1921, and each year thereafter when engaged in such business in this state, pay to the state treasurer * * * a license tax for engaging in such business in this state, equal to one cent for each gallon * * * sold or distributed by such dealer in this state during each year." The complaint alleged that if the statute is construed to require the plaintiff to pay a license of one cent per gallon for each gallon sold during said period for conducting such business after March 4, 1921, it is in conflict with the Fourteenth Amendment, in that it denies to the plaintiff the equal protection of the laws by requiring the plaintiff and others engaged in such business prior to March 5, 1921, to pay a higher license for carrying on such business after March 5, 1921, and that if said statute is construed to be retroactive, and to require the payment of a tax for having carried on such business from January 1, 1921, to March 4, 1921, it is in conflict with the Fourteenth Amendment, in that it deprives the plaintiff of its property without due process of law.

[1] The tax so imposed upon the plaintiff was a tax for the privilege of carrying on the business of selling gasoline and distillate within the state. The power of the state to impose such tax cannot be questioned. In State v. Hammond Packing Co., 45 Mont. 343, 123 Pac. 407, it was held that the Legislature had power to single out dealers in any commodity and compel them to pay a license, and that none of them could complain of the tax as repugnant to the uniformity clause

of the Constitution, so long as the burden fell upon all such dealers alike. In 26 R. C. L. 161, it is said:

"A state may lawfully require, as a condition of the grant of a franchise to be a corporation or to do business as such, and also for the continued exercise of such right or privilege, payment of a specific sum to the state each year or month, or a specific proportion of the gross receipts or of the profits of the corporation, or of a sum to be ascertained in any convenient mode which the Legislature may prescribe."

In St. Louis S. W. Ry. v. Arkansas, 235 U. S. 350, 35 Sup. Ct. 99, 59 L. Ed. 265, it was held that nothing in the Fourteenth Amendment imposes any ironclad rule upon the states with respect to their internal taxation, or prevents double taxation or any other form of unequal taxation, so long as the inequality is not based on arbitrary distinctions. In Maine v. Grand Trunk R. Co., 142 U. S. 217, 12 Sup. Ct. 121, 35 L. Ed. 994, it was held that a state, in imposing such a tax, may apportion the amount exacted according to the value of the business permitted, as disclosed by its gains or receipts of the present or past years. Said the court:

"The rule of apportioning the charge to the receipts of the business would seem to be eminently reasonable, and likely to produce the most satisfactory results."

[2] When the conclusion is reached that the tax in the present case is a tax imposed upon the privilege of doing business in the state, the objection that the act is retroactive disappears. In ascertaining the amount to be paid by the plaintiff, resort could properly be had to the amount of business done by it during the preceding year, or any shorter period. Billings v. United States, 232 U. S. 261, 34 Sup. Ct. 421, 58 L. Ed. 596.

"The validity of a license or privilege tax is in no way dependent on the mode which the state may adopt in fixing the amount for any year which it will exact for the franchise. Its action in this matter is not the subject of judicial inquiry in a federal tribunal." 17 R. C. L. 502; Home Ins. Co. v. New York, 134 U. S. 594, 10 Sup. Ct. 593, 33 L. Ed. 1025; People v. Kelsey, 116 App. Div. 97, 101 N. Y. S. 902.

It follows that the act does not come within the provisions of section 3 of the Revised Codes of 1921, which provides:

"No law contained in any of the Codes or other statutes of Montana is retroactive unless expressly so declared."

In Shwab v. Doyle, 258 U. S. 529, 42 Sup. Ct. 391, 66 L. Ed. ——, cited and relied upon by the plaintiff in error, the Supreme Court reversed the decision of the Circuit Court of Appeals, in which it had been held that under the Revenue Act of 1916, tit. 2, §§ 201, 202 (Comp. St. §§ 6336½b, 6336½c), Congress intended that the tax should apply to all transfers in contemplation of death, whether made before or after the passage of the act, provided the transferor's death occurred after the act took effect, and ruled that the law was not to be applied to cases which arose before its passage; that intention not having been clearly declared. But in the present case, as we have found, the statute has no retroactive effect. The Legislature simply recognized, as it had full power to do, past transactions as entering

into the measure of the license tax which it imposed for the privilege of carrying on a specified business.

[3] But it is said that to impose the tax upon the plaintiff on the basis of sales made by it during the year, including therein the first quarter of 1921, is to discriminate unjustly in favor of those who began to engage in the same business at a later date in the same year, and thereby to deprive the plaintiff of its property without due process of law and deny it the equal protection of the laws. In view of the broad powers, which under the authorities cited above, are vested in the Legislature in the matter of classification of occupations for the purpose of taxation, it is reasonable to hold as pointed out by the court below that the Legislature may have been moved by the consideration that dealers engaged in business before March 5, 1921, "had an advantage in known location, good will, and established trade which rendered the privilege for the balance of the year or quarter more valuable to them than was the like privilege to newcomers in the business." It is to be observed in this connection that no suggestion is made in the complaint that any dealer began the business of selling gasoline and distillate in the state of Montana at any time after the beginning of the year 1921, or that during the year there were in fact any competitors in that business in favor of whom the alleged discrimination could have existed.

The judgment is affirmed.