No. 2626

## CARSON CITY v. RED ARROW GARAGE

May 6, 1924.                              225 Pac. 487.

1. LICENSES—CANNOT PRESUME LEGISLATURE IN EMPOWERING CITY TO TAX BUSINESSES INTENDED TO FAVOR PARTICULAR BUSINESSES.

   The court, in construing Stats. 1921, p. 144, empowering the city of Carson to impose a license tax upon numerous kinds of business, *held* bound to presume the legislature did not intend to favor any kind or class of businesses.

2. LICENSES—AMENDED CHARTER OF CITY OF CARSON HELD TO AUTHORIZE LEVY OF TAX BY CITY ON SALE OF GASOLINE.

   Charter of city of Carson as amended by Stats. 1921, p. 144, which, after enumerating many kinds of business upon which the city is authorized to impose a license tax, authorizes it to fix and have collected a license tax on all trades, professions, and classes of business not thereinbefore specified, *held* to authorize the city to levy a tax on the sale of gasoline.

3. LICENSES—LEVYING OF LICENSE TAX UPON DEALER IN GASOLINE WHO IS ALSO LICENSED GARAGE-KEEPER HELD NOT DOUBLE TAXATION—"GARAGE."

   License tax by ordinance may be levied by city of Carson under its amended charter (Stats. 1921, p. 144) upon a dealer in gasoline who is also a licensed garage-keeper, the sale of gasoline not being essentially a part of the garage business, as a "garage" is a station at which motor cars can be sheltered, stored, repaired, cleaned, and made ready for use, or place for private storage of a motor car; a stable for motor cars.

4. MUNICIPAL CORPORATIONS—RULES OF CONSTRUCTION APPLICABLE TO ORDINANCES.

   The rules of construction applicable to statutes are also applicable to an ordinance.

5. Municipal Corporations—Ordinance Presumed to Accomplish
    Some End.
        The court must presume that a city ordinance was adopted
    to accomplish some end, and not with a view of going through
    a mere idle form.
6. Municipal Corporations — Ordinances Construed to Give
    Them Effect.
        Courts will construe ordinances so as to give effect to
    rather than to nullify them.
7. Municipal Corporations—Intent· Governs Construction ·of
    Ordinance.
        In construing an ordinance, the legislative intent governs,
    and the intent is to be gathered from a consideration of the
    entire ordinance.
8. Licenses — Ordinance Construed as Not Prohibiting Tax of
    Sales of Gasoline by One Operating Garage Business under
    License.
        An ordinance which imposed a license tax upon dealers in
    gasoline, and provided that such license should be "in lieu
    of all other licenses wherein the sale of gasoline may consti-
    tute a part thereof, and to that part only," *held* not to pro-
    hibit the imposition of a tax on sales of gasoline by one
    operating a garage business under a license; the sale of
    gasoline not being essentially a part of the garage business.
9. Licenses—Court Held Bound to Presume License Tax for
    Garage Business Was Paid Independently of Sales of
    Gasoline in Absence of Facts to Contrary.
        Where ordinance provided garage license tax to be paid
    quarterly in advance unless otherwise provided for, court
    must presume, in absence of contrary showing, that city col-
    lected license in advance for defendant's garage business, and
    that the tax sought to be recovered from defendant for the
    same period of time under an ordinance imposing a license tax
    on sales of gasoline was no part of the amount paid under the
    garage license.
10. Municipal Corporations—Number Held Not to Show Later
    Adoption of Ordinance.
        The mere fact that one ordinance bore the number 168 did
    not establish that it was adopted later than one numbered 167,
    so as to repeal it.

APPEAL from First Judicial District Court, Ormsby
County; *G. A. Ballard,* Judge.

Action by Carson City against the Red Arrow Garage
and Auto Company. From a judgment for plaintiff, and
from an order denying motion for new trial, defendant
appeals. **Affirmed.**

*Platt & Sanford,* for Appellant: .

The so-called "gas-tax" ordinance, No. 167, exceeds
provisions of charter and is therefore void. Ordinance

No. 168 levies tax upon garage business, which business includes sale of gasoline. Ordinance No. 167 is discriminatory and invalid as double taxation. It was also repealed by No. 168. The power to tax business must be expressly conferred. 1 Dillon, Municipal Corporations, secs. 667, 2471.

The charter gives the right to tax garages. Stats. 1921, p. 144. Section 8 of Ordinance No. 168 imposes license upon garages or garage business. Words in a statute should be given their ordinary meaning unless the contrary appears. Ex Parte Ming, 42 Nev. 472.

The stipulation of facts expressly states that garages in Nevada customarily sell gasoline as part of garage business. The garage is modern substitute for ancient livery stable. Smith v. O'Brien, 94 N. Y. Supp. 673; Diocese of Trenton v. Toman, 70 Atl. 606. The words "livery-stable keeper" in old charter (Stats. 1907, p. 54) are succeeded by "garage" in present charter, while the former are dropped, showing clear substitution.

A municipality cannot levy tax upon particular elements of one business. Stockwell v. Hailey, 229 S. W. 382; Hotelling v. City of Chicago, 66 Ill. App. 289; Ex Parte Sims, 25 South. 280; Canova v. Williams, 27 South. 30; Tuscaloosa v. Holezstein, 32 South. 1007.

The ordinance admits selling gasoline is incident of garage business, and then attempts to divide that business into parts and tax one of its elements. Charter power to tax cannot be varied by ordinance. Dillon, sec. 2404.

Section 18 of charter provides all money collected must go into general fund. Ordinance No. 167 provides all money received under it shall go into street fund, a plain violation of charter.

*John M. Chartz,* City Attorney, for Respondent:

Ordinance No. 167 is special gasoline-license act. Ordinance No. 168 is general merchandise-license act. The charter permits licensing of business "not otherwise specified." St. Louis v. Baskowitz, 201 S. W. 870.

Gasoline, being explosive, would be subject to regulation and license. Metropolis Theater Co. v. Chicago, 246 Ill. 20.

The peculiar qualities of gasoline and illuminating oils seem a sufficient warrant for putting them in class by themselves for excise taxation. Texas v. Brown, 66 L. Ed. 228.

Where two or more distinct businesses are combined, each may be licensed. Ex Parte Siebenhauer, 14 Nev. 265.

Selling gasoline is not now inseparable part of garage business. Nevada has seen fit to require separate license for it.

Dealers in oleomargarine, butterine, and imitation cheese may be separately licensed, and, if burden falls on all such dealers alike, no one is aggrieved. Proceeds of such sales should not be included in general merchandise sales. State v. Hammond Packing Co., 123 Pac. 407. This covers objection of double taxation.

Amos v. Gunn, 94 South. 615, holds tax on gasoline constitutional.

Continental Oil Co. v. Walker, 285 Fed. 729, holds state has power to impose license tax on dealers in any commodity determinable on amount of business done.

Altitude Oil Co. v. People, 202 Pac. 180, holds gasoline tax is in no sense discriminatory because it applies to all sales of its kind.

Askren v. Continental Oil Co., 252 U. S. 444, holds gasoline tax constitutional.

Appellant does not pay flat rate for running garage. It pays on amount of business done, which does not include gasoline sales, and so does every other merchant handling gasoline.

There is no irreconcilable conflict between the two ordinances. Repeals by implication are not favored. State v. Ducker, 35 Nev. 214.

City trustees not only have right to transfer funds from general to special funds, but budget law (Stats. 1917, p. 249) requires them to do so. This question was not raised and is not involved in instant case. If party's rights are not affected by statute or a part thereof, its constitutionality will not be considered upon his application. Ex Parte Goddard, 44 Nev. 134.

By the Court, COLEMAN, J.:

This is an action to recover a judgment against the defendant, a corporation, in the sum of $200 alleged to be due plaintiff pursuant to an ordinance adopted by the plaintiff city imposing a license tax upon dealers in gasoline at the rate of 1 cent per gallon for each gallon sold or delivered. The action was commenced in the justice's court, and after the answer was filed was, pursuant to law, certified to the district court. It was tried to the court on an agreed statement of facts. The court rendered a judgment in favor of the plaintiff. A motion for a new trial having been denied, an appeal was taken from said order and the judgment.

It is agreed, inter alia, that both of the parties hereto are duly incorporated. It is also stipulated:

"That the city trustees did in March, 1922, pass two ordinances providing for license taxes under its charter. That one of said ordinances was general in its nature, and the other applied solely to the sale of gasoline."

It may be borne in mind that the special ordinance levying the gasoline tax is No. 167, and the general ordinance is No. 168.

It is further stipulated that the special ordinance imposes a license tax of 1 cent per gallon for each gallon of gasoline sold or delivered within the plaintiff city; that gasoline had been sold by the defendant within said city since the adoption of said ordinance, and that it had neglected and refused to pay a license tax, as provided for in Ordinance No. 167. It is also stipulated that the defendant is engaged in the general public garage business, and as a part of such business sold and disposed of gasoline in the plaintiff city for several years prior to the adoption of Ordinance No. 167; that public garages in Nevada customarily sell and dispose of gasoline as a part of the garage business, and that during the period for which it is sought to recover the tax on the sale of gasoline the defendant had paid a license for conducting a garage business.

The charter of the city of Carson as amended (Stats. 1921, p. 144) authorizes the city to impose a license tax

upon numerous kinds of businesses. After enumerating many kinds of businesses upon which plaintiff city is authorized to impose a license tax, it provides:

"And to fix and have collected a license tax on all trades, professions, and classes of business carried on in said city and not hereinbefore specified."

We think that the foregoing statement is sufficiently comprehensive to clearly present the points urged in behalf of the appellant.

1, 2. The first point made in behalf of the contention that the judgment is erroneous is that no authorization can be found in the charter of the plaintiff city for the levying of a tax on the sale of gasoline. In support of this contention appellant invokes the general rule stated in 1 Dillon, Municipal Corporations (5th ed.), p. 448, sec. 237, which reads:

"It is a general and undisputed proposition of the law that a municipal corporation possesses and can exercise the following powers, and no others:

"First, those granted in express words.

"Second, those necessarily or fairly implied in or incident to the powers expressly granted.

"Third, those essential to the accomplishment of the declared objects and purposes of the corporation, not simply convenient, but indispensable.

"Any fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts against the corporation, and the power denied. Of every municipal corporation the charter or statute by which it is created is its organic act. Neither the corporation nor its officers can do any act, or make any contract, or incur any liability, not authorized thereby, or by some legislative act applicable thereto. All acts beyond the scope of the powers granted are void. Much less can any power be exercised, or any act done, which is forbidden by charter or statute. These principles are of transcendent importance, and lie at the foundation of the law of municipal corporations."

As we read the brief of counsel for respondent, it is conceded that the statements quoted are sound in

principle. Accepting these statements as being correct statements of the law, let us consider the charter provision in question.

This provision, after enumerating a great number of kinds of businesses which shall be subject to taxation, contains the following:

"And to fix and have collected a license tax on all trades, professions, and classes of business carried on in said city and not hereinbefore specified."

To the layman this provision would be clear and unequivocal, needing no interpretation, elucidation, amplification, or consideration. Why not so in the realm of jurisprudence? To the layman it no doubt appears at a glance that this general provision could have but one meaning, purpose, or object, for the discovery of which no prolonged or profound search should be necessary, namely, to make subject to a tax levy any business, trade or profession which through oversight had been omitted from the list of businesses enumerated. In construing statutes, constitutions, and ordinances it is a cardinal rule that, where the language used is doubtful, the court must look to the intention of the provision to ascertain its meaning. We do not think the provision in question in the least uncertain, nor can the intention of the legislature be in doubt. The sole purpose of the legislature was to enable the city to bring all kinds of business within its taxing power. This is clear from the language used. Indeed, it would be quite remarkable if such were not the case. Why should we presume that the legislature sought to favor any kind or class of business or profession? To presume such thing would be to impute to the legislature improper motives. Not to impute such motives leads irresistibly to the conclusion that it meant to authorize the levying of a tax indiscriminately. We must presume the legislature did not intend to favor any kind or class of business. But our attention is also directed to the following rule:

"If the charter or statute enumerates the occupation or business which may be regulated and licensed, the

enumeration, if on the whole such appears to be the legislative intent, is exclusive, and the municipality has no power to license or regulate occupations or businesses not embraced in the enumeration." 2 Dillon, Municipal Corporations (5th ed.), p. 448, sec. 237.

There is nothing in this section which justifies a different conclusion. It simply lays down the rule that, where the charter enumerates the various lines of business which shall be subject to taxation, such enumeration is exclusive, "if on the whole such appears to be the legislative intent."

But we are not left to our own inclinations and views in reaching this conclusion. The identical point here presented was disposed of in City of St. Louis v. Bowler, 94 Mo. 630, 7 S. W. 434. The court in that case, in construing the phrase "all occupations, professions, and trades not heretofore enumerated, of whatever name or character," which followed the enumeration of various kinds of businesses, as does the sentence in question in the instant case, said:

"This language is so very comprehensive that no necessity exists to invoke the rule of ejusdem generis in the case at bar, if the language employed in the concluding words is to have accorded to it its usual signification."

To the same effect is City of St. Louis v. Baskowitz, 273 Mo. 543, 201 S. W. 870.

3. The next point is that the sale of gasoline is incidental to and a part of the garage business, and defendant, having paid a license tax for the privilege of conducting the garage business, is not subject to the tax in question. We are clearly of the opinion that there is no merit in this contention. We may say that counsel for appellant cite cases in support of the contention that the sale of gasoline, in the circumstances, is a part of the garage business. We do not think they sustain the contention. We shall not undertake to distinguish the cases relied upon, as it would needlessly prolong this opinion, but come directly to a disposition of the point in hand.

If the contention of the appellant be carried to its logical conclusion, it might follow that there could be no such thing as imposing a license tax for the selling of any article independently of a general business. For instance, grocery stores in some places sell not only what are generally considered groceries, but articles of every character, including patent medicines, gasoline, near beer, high explosives, farming implements, firearms, and an innumerable list of wares. Yet the mere fact that a merchant who is conducting a grocery store under a license to do so sells and disposes of coffins and furniture does not constitute such articles groceries any more than would the selling of cigars and tobacco make such articles groceries. We think our idea is clearly expressed in Hewin v. Atlanta, 121 Ga. 723, 49 S. E. 765, 67 L. R. A. 795, 2 Ann. Cas. 296, where it is said:

"If an occupation is so made up as to include two or more separate and distinct classes of business, each of which could be maintained as a separate business, that is, a business in the sense in which that term is above used, then, under the power to classify subjects of business for taxation, the municipal authorities might be empowered to impose a separate tax upon each class of business embraced within this occupation. The department store is a familiar illustration of different classes of business going to make up one occupation. So it is with the hotel-keeper, who, in addition to furnishing lodging and meals, sells cigars, liquors, newspapers, operates a barber-shop," etc.

The case of Hirsh v. Commonwealth, 21 Grat. (Va.) 785, also sustains our conclusion. That was a case in which it was held that one paying a general merchandise tax would be liable for a tax as a junk dealer where he accepted in payment for his goods wheat, corn, old iron, rags, etc.

In Keely v. Atlanta, 69 Ga. 583, it was held:

"The general business of merchandise may well be specified as millinery business, or hats, shoe and boot business, or ordinary dry-goods business, and the ordinance is not ultra vires, because one who pays an

ad valorem tax is also required to pay a business tax of $25 on each of these specific businesses. So, too, the power to 'classify business and arrange the various businesses * * * into such classes of subjects for taxation as may be just and proper,' seems to us to be conclusive. It was given on purpose to enable the city to avoid the injustice of allowing one person engaged in trade or merchandise to pursue various trades and various branches of distinct merchandise, which might be justly and properly subdivided into classes by the payment only of one business tax, while his neighbor, who dealt only in one trade or in one branch of merchandise, was compelled to pay the same tax. Suppose the complainant sold in one store what is ordinarily called dry goods only, and in another store shoes, boots and hats, and in a third store millinery, could it be held that the payment of one tax, as a specific business tax, would allow him to engage in these three classes of merchandise? Certainly not. What difference can it make if he spreads out one store so wide as to cover the three classes under one roof in distinct parts of the same store?"

It was held in New Orleans v. Metropolitan Bank, 31 La. Ann. 310, that the payment of a tax to do a banking business did not exempt one from the payment of a tax as a pawnbroker.

It was said by the Supreme Court of the United States in Texas Co. v. Brown, 258 U. S. 466, 42 Sup. Ct. 375, 66 L. Ed. 721:

"The peculiar qualities of illuminating oils and gasoline seem to us a sufficient warrant for putting them in a class by themselves for excise taxation upon their sale or use."

If we accept this statement by the highest court of the land as being worthy of our adoption, it must determine the point, and it seems to us that every consideration should impel us to accept it. The sale of gasoline is no more a part of the garage business than it is of the grocery business. It is sold in connection with both of the businesses mentioned.

It is said that the garage is the modern substitute for the livery stable. Smith v. O'Brien, 46 Misc. Rep. 325, 94 N. Y. Supp. 673; Diocese of Trenton v. Toman, 74 N. J. Eq. 702, 70 Atl. 606. It is true that a garage has some of the elements of the livery stable, but it certainly cannot be said for the purpose of determining whether a license tax can be levied upon dealers in gasoline that such a suggestion should control. The Century Dictionary defines a garage as being "a station at which motor cars can be sheltered, stored, repaired, cleaned, and made ready for use; also a place for private storage of a motor car, a stable for motor cars." White v. Home Ins. Assn., 189 Iowa, 1051, 179 N. W. 315. Garage is also defined as a building for the storage of automobiles. New Standard Dictionary; Taylor v. State, 191 Ind. 200, 132 N. E. 294. We think these are correct definitions of "garage." While repairing is one of the prime essentials of a garage, such was not one of the purposes of a livery stable. If a horse was to be shod or a buggy or wagon repaired, it was not taken to a livery stable but to a blacksmith shop.

Other authorities supporting the conclusion that the levying of the license tax upon dealers in gasoline who are also garage-keepers is not double taxation are Mayor v. Feeley, 66 Ga. 31; Wilder & Co. v. Mayor, 70 Ga. 760, 48 Am. Rep. 598; State v. Hammond Packing Co., 45 Mont. 343, 123 Pac. 407; Lewis v. Mayor and Alderman of City of Savannah, 151 Ga. 489, 107 S. E. 588.

4, 8. It is next contended that the ordinance in question "by its terms admits its invalidity." This contention is based upon the following language in the ordinance:

"SEC. 5. The license provided for in this ordinance shall be in lieu of all other licenses wherein the sale of gasoline may constitute a part thereof and to that part only."

In support of the contention it is said that the ordinance "admits that the sale of gasoline is an incident of 'some other' business, and then attempts to divide or segregate the business into parts and tax one

of the elements." We cannot agree with the contention. In construing an ordinance we are controlled by the same rules of construction applicable in the construction of statutes. It is very evident that the ordinance was not adopted with the view of going through a mere idle form, but for the purpose of accomplishing some end. We must so presume. It is a well-recognized rule that courts will construe statutes and ordinances so as to give effect to rather than nullify them. State v. Martin, 31 Nev. 493, 103 Pac. 840. It is also a cardinal rule of construction that the legislative intent governs in construing a statute or ordinance. What, then, was the clear intent prompting the adoption of the ordinance? This intent must be gathered from a consideration of the entire ordinance, and not from one section thereof only. From a reading of the entire ordinance it is clear that its purpose is to levy a license tax on the sale of gasoline where the sale thereof is not essentially a part of the business taxed. It is clear that section 5 was incorporated in the ordinance through abundance of precaution for the sole purpose of preventing the collection of a double tax. Counsel for respondent has his theory as to the interpretation to be placed upon section 5, and cites State v. Hammond Packing Co., 45 Mont. 343, 123 Pac. 407, to sustain him. We have held that the sale of gasoline is not essentially a part of the garage business, and hence that the ordinance does not subject defendant to a double tax. It is not incumbent upon us in this case to say in what circumstances the section in question might be invoked, since it does not affect the defendant.

9. It is next asserted that the plaintiff is estopped from collecting the license tax sued for, since under Ordinance No. 168 it has paid for the privilege of selling gasoline. The city of Carson has two ordinances relating to license taxes, numbered, respectively, 167 and 168, both of which were adopted in March, 1922. Ordinance No. 167 is the one fixing the license tax of 1 cent per gallon for each gallon of gasoline sold. Ordinance No. 168 is a general ordinance requiring a license tax

to be taken out quarterly, payable in advance, unless otherwise provided for. This ordinance covers the garage business and many others.

In the agreement of facts we find this:

"That the defendant corporation applied for and paid a license tax to Carson City as a 'garage' under and by virtue of general Ordinance No. 168, as above quoted."

Counsel for defendant say in their brief:

"The sums realized from all sales, including that of gasoline, were therefore included in the gross amount adopted and used by Carson City to fix, define, and establish the amount of tax collected from the appellant herein for the quarter period ending June 30, 1922, under provisions of section 8 of Ordinance No. 168, which is the same period that the respondent attempts to collect the additional amount under Ordinance No. 167. With these admitted facts and conditions, we submit that, whether the ordinance stands or falls, the respondent is estopped by its own acts from collecting a license tax from the appellant for the particular period of time when it has already collected a tax based upon such specific sales."

As we understand this contention, it is that plaintiff is estopped from recovering for the reason that the defendant has in fact settled with the plaintiff upon a basis which includes the sales of gasoline. There is nothing in the agreed statement to show that such is the fact. On the contrary, we must conclusively presume that such is not the fact. Ordinance No. 168 expressly provides that the license tax for conducting the garage business must be paid quarterly in advance unless otherwise provided for. There is nothing in the record to show that it was otherwise provided for in this instance; hence we must presume that the license was collected in advance for the garage business, and that the amount sought to be recovered is no part of the amount paid under Ordinance No. 168. This, we think, disposes of the estoppel theory.

10. It is next asserted that Ordinance No. 168 repealed Ordinance No. 167, and hence there can be

no recovery. There is nothing in the record to show that Ordinance No. 168 was adopted subsequently to Ordinance No. 167. The mere fact that it bears a subsequent number does not establish that it was adopted later.

Counsel for appellant suggest one other point in their brief, but, since it does not pertain to a matter affecting the validity of the license tax nor the liability of the appellant, we decline to consider it.

The judgment and order are affirmed.