UNITED STATES GYPSUM CO., RESPONDENT, *v.* STATE
BOARD OF EQUALIZATION ET AL., APPELLANTS.

(No. 8489.)

(Submitted May 8, 1944. Decided June 19, 1944.)

[149 Pac. (2d) 774.]

276

*Mr. R. V. Bottomly,* Attorney General, and *Mr. I. W. Choate,* Tax Counsel for State Board of Equalization, for Appellants, submitted a brief; *Mr. Choate* argued the cause orally.

*Mr. Ralph J. Anderson,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This is an appeal from a judgment restraining the collection of an item of license tax imposed on the business of manufacturing gypsum products. Plaintiff owns and operates a gypsum plant at Heath, Montana, where it mines gypsum and manufactures various products therefrom. The tax item in controversy is sought to be collected under the provisions of Chapter 213 of the Revised Codes, known as the Cement Producers' License Tax, Code sections numbers 2356 to 2366.

It is therein provided that: "Every person engaged in or

carrying on the business of producing or manufacturing cement, cement plaster, gypsum plaster or other products of cement or gypsum in this state, and any person who imports into this state any such products for sale or use, must, for the year 1931, and each year thereafter, when engaged in or carrying on such business in this state, pay to the state treasurer, for the exclusive use and benefit of the state of Montana, a license tax for engaging in and carrying on such business, in an amount equal to four cents (4c) per barrel .for each and every barrel of cement containing three hundred and seventy-six (376) pounds, and five cents (5c) per ton of two thousand (2,000) pounds on cement plaster, or gypsum or gypsum products manufactured, produced, or imported into this state during such year by such person.'' (Sec. 2357.)

The tax is payable quarterly. Records are required to be kept and statements are required to be filed by the manufacturer with the State Board of Equalization for determining the amount. (Secs. 2360 and 2361.) There is provision for payment and collection and penalties. (Sec. 2363.) In all of these administrative provisions the only measurement referred to as the basis of computation of amount is ''the number of barrels of cement, tons of cement plaster or gypsum plaster manufactured or produced.'' No mention is therein made of ''other products.'' The omission of reference to ''other products'' in these administrative provisions occurred in the amendment of the law in 1931. As originally enacted the law was framed for the collection of a license tax computed on ''cement, cement plaster or gypsum plaster'' manufactured, and on no other product. (Chapter 15, Laws of 1921, Extra Session.) The amendment of 1931, Chapter 166, extending the application to ''other products,'' was written into section 2357 only. (Sections 2360, 2361 and 2363, which provide for the ascertainment and collection of the tax, were not amended and no provision was made for the determination of the tax and its collection on ''other products.''

Plaintiff produces and manufactures gypsum plaster and

other products having gypsum content, including wallboard with a gypsum content of 79.2%. The state has sought to include in the amount of its license tax a sum based upon the quantity of wallboard manufactured, computing the amount of the tax on the quantity of gypsum utilized in such manufacture. This item the plaintiff has refused to pay, and the question is whether it may rightly be included.

In the trial of the case testimony was adduced explaining the process of manufacture of gypsum plaster and the process for wallboard, the purpose being to show the difference in substance and character of the two articles. The contention of plaintiff is that in computing the amount of the tax it must pay, the wallboard cannot be taken into account for the reason that there is no adequate law provision for it to be included. We think this contention must be sustained.

The state's contention is that the partially refined gypsum used in the manufacture of wallboard shall be measured by weight and the quantity thereof taken into account in computing the amount of the tax. Had that been the intention of the legislature, it would have been expressed in different language. The provision would have been for a tax on the quantity of gypsum used instead of on the products of manufacture. Here the language clearly shows that any such license tax enacted must find its basis in the quantity of the products manufactured and not in the quantity of the gypsum used ("business of producing or manufacturing * * * gypsum plaster and other products * * *"). The partially refined gypsum would not be an article of manufacture. (*City of Louisville* v. *Ewing, etc.,* 268 Ky. 652, 105 S. W. (2d) 801; *Anheuser-Busch Brewing Ass'n.* v. *United States,* 207 U. S. 556, 28 S. Ct. 204, 206, 52 L. Ed. 336; *Hartranft* v. *Wiegmann,* 121 U. S. 609, 7 S. Ct. 1240, 30 L. Ed. 1012.)

This is an occupation tax imposed on the business of manufacturing gypsum products and its purpose is to provide revenue. It is based on the results of manufacture, being computed upon the quantity of production. It is the gainfulness of the

occupation that justifies the tax. The gain lies in the production of articles ready for the market. Until there are articles so completed, there is nothing upon which to compute the tax. The ingredients employed are not products within the meaning of this law; they are not the source of gain. It is only after the ingredients have been made into the finished product, ready for the market, that there is any source of gain in the occupation.

While there is very little restriction upon the legislature in devising means for the exaction of such a tax, the determination of the amount must have some reasonable basis. Here it is the quantity of manufactured articles, usable and salable and ready for the market, that has been chosen by the legislature as the basis.

In seeking to apply the tax generally to gypsum products manufactured, we come further into the field of uncertainty. Gypsum is used in the manufacture of many articles, varying widely in substance and character. There is gypsum plaster of various kinds, building blocks and tile, insulation material, Plaster of Paris products; all composed largely of gypsum. There are other articles of manufacture in which gypsum is used, but with less gypsum content. This makes uncertain what all is intended to be included as gypsum products subject to the tax; question of gypsum content arising as of important consideration.

To apply the tax to wallboard, in addition to the question of gypsum content, there is uncertainty in the unit of measure for computation of the tax. The tax is based on quantity of production and the specified measure of quantity is only by barrel and by ton with the rate fixed on such units of measure. Cement and gypsum plaster are sold by the barrel and by the ton. Wallboard is a building material handled and sold by the square foot—same as lumber—and not by the barrel nor by the ton. It cannot be measured by the barrel nor can it well be measured by the ton. This uncertainty of provision for measurement makes the tax indeterminate as applied to wallboard. This court has said, quoting Cooley on Taxation, that

"there cannot be any imposition of a tax without the rate or amount being fixed. An undetermined tax is no tax." (*State ex rel. Bennett* v. *State Board of Examiners,* 40 Mont. 59, 64, 104 Pac. 1055, 1057.)

Instead of assuming that the legislature intended to include ██ all articles of manufacture in which gypsum is used, it is more reasonable to believe that what it had in mind was gypsum products made and handled much in the same way as plaster. This is the basis of the well-established rule of *ejusdem generis.* The products which cannot be seen as included within the law as it stands, the court may not make provision for. Tax statutes must be clear and specific. Nothing may be left to speculation and conjecture. If there be uncertainty, the rule is that any controversy arising as the result thereof must be resolved in favor of the taxpayer. Sutherland on Statutory Construction, in discussing this well-established rule, says: "It was declared in *United States* v. *Wigglesworth* [Fed. Cas. No. 16,690] that statutes levying taxes or duties on subjects or citizens are to be construed most strongly against the government, and in favor of the subjects or citizens, and their provisions are not to be extended by implication beyond the clear import of the language used, or to enlarge their operation so as to embrace matters not specifically pointed out, although standing upon a close analogy."

The state seeks to supply the omissions in the law by implication, the contention being that with mention of "other products" in section 2357 the provision for collection must follow as impliedly enacted. The difficulty is that we would have to find by implication just how the legislature intended wallboard should be measured as well as the rate of computation of the tax. This would clearly be far beyond that which might be implied. The levy and collection of a tax must have clear legislative authority for its imposition; the court may not supply the legislative expression needed.

The only question intended to be brought up by this appeal is whether the license tax provided for by Chapter 213 of the

Revised Codes applies to the manufacture of gypsum wallboard. As already indicated by the foregoing, our conclusion is that it does not.

The judgment of the lower court is affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICE MORRIS concur.

MR. JUSTICE ADAIR, dissenting:

I am unable to follow the reasoning by which the majority opinion reaches the conclusion that there is no adequate provision for including wallboard when computing the amount of the license tax which the plaintiff is required to pay under the statute. The plain language of the statute specifically and definitely requires manufacturers and producers to account for all "gypsum or gypsum products manufactured, produced or imported in this state" by them when computing the amount of the annual license tax to be paid by them. It is conceded that during the time here involved the plaintiff owned and operated a gypsum plant in this state where it mines gypsum and manufactures products therefrom. One of the products which plaintiff manufactures is wallboard. Wallboard has a gypsum content of 79.2 per cent. The term "gypsum products" is much more general and comprehensive than the term "wallboard" but I fail to see how it can be said that "wallboard" having a gypsum content of almost 80 per cent. is not a gypsum product and as such included in the statute which provides: "Every person engaged in or carrying on the business of producing or manufacturing * * * gypsum plaster or other products of * * * gypsum in this state, and any person who imports into this state any such products for sale or use, must, * * * each year * * * when engaged in or carrying on such business in this state, pay * * * a license tax for engaging in and carrying on such business, in an amount equal to * * * five cents (5c) per ton of two thousand (2,000) pounds on * * * *gypsum or gypsum products manufactured, produced* or imported into this state during such year by such person." Sec. 2357, Rev. Codes. (Emphasis mine.)

The majority opinion correctly recognizes that the 1921 and 1925 Acts, Chapter 15, Laws of 1921, and Chapter 127, Laws of 1925, did not mention or include within their terms "gypsum products" but by the amendment brought about through the enactment of Chapter 166, Laws of 1931, now section 2357 of the Revised Codes of 1935, "gypsum products" were specifically written into the Act and it is apparent that the very purpose the legislature had in thus amending the law was to include therein "gypsum products" and as evidence of such intent the legislature specifically mentioned and included such products both in the title of the Act as well as in the body thereof. The title to Chapter 166, Laws of 1931 reads: "An Act to Amend Section 2357 of the 1921 Revised Codes of Montana, as Amended by Section 1 of Chapter 127 of the Laws of 1925; Requiring Persons Engaged in the Business of *Producing, Manufacturing,* or Importing Cement and *Gypsum and Products of Either;* to Pay to the State of Montana a License Tax for Engaging in Such Business; Fixing the Amount of Such License Tax and Defining the Term 'Import'." (Emphasis mine.)

The state legislature may, either in the exercise of the police power or for the purpose of revenue, require licenses or impose license taxes on occupations or privileges within the limits of the State. (*Johnson* v. *Great Falls,* 38 Mont. 369, 99 Pac. 1059, 16 Ann. Cas. 974; *State* v. *Camp Sing,* 18 Mont. 128, 44 Pac. 516, 32 L. R. A. 635, 56 Am. St. Rep. 551.) This form of legislation is expressly authorized by section 1 of Article XII of the Constitution which, in part, provides that, "The legislative assembly may also impose a license tax, both upon persons and upon corporations doing business in the state." (See also *State* v. *Hammond Packing Co.,* 45 Mont. 343, 123 Pac. 407, affirmed 233 U. S. 331, 34 S. Ct. 596, 58 L. Ed. 985.) Pursuant to such provision of the Constitution the legislature exercised its authority by the enactment of the license tax law, Chapter 166, Laws of 1931, here involved. This court should so interpret such valid enactment as to make it effective and not, by strained

construction, nullify and defeat the plainly expressed intent of the legislature.

Mr. Justice Erickson:

I concur in the foregoing dissent of Mr. Justice Adair.